TRAVIS–WILLIAMSON COUNTY WATER CONTROL AND IMPROVEMENT DIS-TRICT NO. I, Appellant,

v.

Holland PAGE et al., Appellees.

No. 10886.

Court of Civil Appeals of Texas.

Austin.

May 16, 1962.

Rehearing Denied June 13, 1962.

J. C. Hinsley, Austin, for appellant.

Arthur P. Bagby, John C. Foshee, Austin, Polk Shelton, Cofer & Cofer, Douglass D. Hearne, Austin, House, Mercer, House & Brock, San Antonio, for appellee.

HUGHES, Justice.

We have previously granted the motion of appellant, Travis-Williamson County Water Control and Improvement District No. 1, to extend the time for filing a statement of facts in this case. The motion was timely filed under Rule 386, Texas Rules of Civil Procedure. Filed in connection with the motion was an affidavit of the official court reporter who reported this 18-day trial in which he stated that he "could not" prepare the statement of facts in sixty days, the time allowed by the Rules. It appears from the record that the statement of facts was actually prepared and filed in sixty six days. We affirm our ruling in extending the time for filing the statement of facts herein.

This is a controversy between the Water District and appellees, Holland Page and R. Ward Smith, growing out of the construction of a water system for the District by Holland Page, the construction contractor, and his subcontractor, R. Ward Smith. Globe Indemnity Co., an appellee herein, was surety on a performance bond given by Smith to Page.

Holland Page was plaintiff below and R. Ward Smith while nominally a defendant is aligned with Page insofar as they both sought a money judgment against the District on the construction contract.

After an extended jury trial, judgment was rendered against the District and in favor of Page for $29,629.95, and in favor of Smith for $15,854.77, plus 6% interest from March 15, 1958.

Appellant's first three points are that the Court erred in rendering judgment for the amounts indicated and in not rendering judgment for it for liquidated damages provided for in the construction contract for delay in the completion beyond the time allotted.

We will discuss the latter point first.

The contract provided that for each day's delay beyond the 210 days allowed "to substantially complete" the contract, the District could withhold as liquidated damages the sum of $100.00.

The 210 days allotted for completing the contract expired July 31, 1957. Two days earlier, the engineer for the Water District advised Page that the work was not substantially completed and that liquidated damages would be assessed commencing July 31st. The jury disagreed with this conclusion of the engineer and found that on July 31st the work under the contract had been "substantially completed by Smith and Page."

The term "substantially completed" was defined in the contract as follows:

"By the term 'substantially completed' is meant that the structure has been made suitable for use or occupancy and is in condition to serve its intended purpose, but still may require minor miscellaneous work and adjustment."

It is undisputed that the contract, on July 31st, was not fully completed. In

fact, it was never fully completed by Page and Smith. It was completed by Bland Construction Company, a matter to be later discussed.

It is also undisputed that by May 10, 1957 the water lines constituting the water system as then contracted for had been laid, tested, filled with water, and were then being used to serve the customers of the District.

Colonel Homer Trimble, engineer and supervisor of construction for the District testified that on July 10, 1957, "* * * the work that remained to be done related primarily, almost exclusively, to what can fairly be called clean-up and adjustment works. * * *"

It is our opinion that the answer of the jury finding substantial completion of the contract is amply supported by the evidence. Atkinson v. Jackson Bros., Tex. Com.App., 270 S.W. 848, 38 A.L.R. 1377.

Appellant contends that this finding of the jury is of no avail since it is undisputed that its engineer did not issue a certificate of completion as provided in the contract. We quote from the contract:

"25. FINAL COMPLETION AND ACCEPTANCE. Within ten (10) days after the CONTRACTOR has given the ENGINEER written notice that the work has been completed, or substantially completed, the ENGINEER and the OWNER shall inspect the work and within said time, if the work be found to be completed or substantially completed in accordance with the plans and specifications, the ENGINEER shall issue to the OWNER and the CONTRACTOR his Certificate of Completion, and thereupon it shall be the duty of the OWNER within said ten (10) days to issue a Certificate of Acceptance of the work to the CONTRACTOR.

"26. FINAL PAYMENT. Upon the issuance of the Certificate of Completion, the ENGINEER shall proceed to make final measurements and prepare final statement of the value of all work performed and materials furnished under the terms of the Agreement and shall certify same to the OWNER, who shall pay to the CONTRACTOR on or before the 15th day after the date of the Certificate of Completion the balance due the CONTRACTOR under the terms of this Agreement, provided he has fully performed his contractual obligations under the terms of this contract; and said payment shall become due in any event upon said performance by the CONTRACTOR.

"27. ENGINEER'S AUTHORITY AND DUTY. It is mutually agreed between the parties to this Agreement that the ENGINEER shall supervise all work included herein. In order to prevent delays and disputes and to discourage litigation, it is further agreed by and between the parties to this contract, that if it cannot be otherwise agreed, the ENGINEER shall in all cases determine the amounts and quantities of the several kinds of work, which are to be paid for under this contract, and he shall determine all questions in relation to said work, and the construction thereof, and he shall in all cases decide every question which may arise relative to the execution of this contract on the part of said CONTRACTOR, that his estimates and findings shall be the conditions precedent to the right of the parties hereto to arbitration or to any action on the contract, and to any rights of the CONTRACTOR to receive any money under this contract; * * *."

To sustain its contention, appellant cites The City of San Antonio v. McKenzie Const. Co., 136 Tex. 315, 150 S.W.2d 989, and other authorities. This case stands for the rule that the acts of

an engineer, as here, who is given final authority as to matters committed to his judgment, cannot be impeached except for fraud, misconduct, or such gross mistake as would imply bad faith.

Page, here, pleaded that the refusal of the engineer to issue a certificate of completion was arbitrary and in violation of the contract.

We believe that such pleading was within the ambit of conduct proscribed in McKenzie. Arbitrary acts are capricious, despotic, tyrannical, bound by no law, and are performed without regard to principles. We could not sustain an arbitrary act of a supervisory engineer with any better grace than we could sustain his fraudulent act.

■ We believe the refusal of the engineer to issue the certificate of completion, in the light of the jury finding, was arbitrary as being without legal warrant in the sense that it was contrary to the terms of the contract which defined his authority, and by which he and the parties were bound. See: Harrell v. City of Lufkin, Tex.Com.App., 280 S.W. 174.

■ This brings us to a consideration of appellant's contention that it should have been credited on the sum due Page on the contract with the amount paid Bland Construction Company to complete the contract. This amount was $39,234.07.

The contract provided several methods for completing the contract in the event, as here, the contract was abandoned by the contractor prior to completion. The method selected by appellant was through notice and sealed bids. Bland Construction Company was awarded the completion contract for the sum stated and it completed the original contract to the satisfaction of appellant.

The engineer for appellant had listed certain items considered by him to be deficiencies in the performance of the construction contract at the time of its abandonment by Page. An issue was submitted to the jury inquiring as to the reasonable cost of remedying these deficiencies and it answered: $14,990.00.

Appellee Smith, in his brief, in listing the "calculations upon which the Trial Court's judgment is based" deducts from the amount due Page the sum of $14,990.00 as "reasonable cost of completion as found by the jury."

We quote appellant's position in this regard:

"The express provisions of the contract having been followed in letting the new contract for the completion of the work, the defaulting contractor on the original contract cannot now be heard to say that the price for completion in the contract of Bland Construction Company was not a reasonable price, in the absence of allegations and proof that there was collusion or fraud in the awarding of such contract. All of the evidence negatives any such fraud or collusion, and neither Holland Page nor R. Ward Smith alleged any such fraud or collusion in the awarding of this contract."

Appellee Page makes no specific answer to this problem which appellant presents. He does assert that the jury finding of $14,990.00 is supported by the evidence even though it is well under his testimony that $25,000.00 would be required to complete the contract.

We can think of no valid reason for discarding the remedy which the parties agreed should be adopted if the eventualities found here occurred. It would not do, we believe, for appellant to be required to assume the risk of an unfavorable jury finding such as we have here when appellant complied with the contract and appellee Page is the defaulting party.

Try the shoe on the other foot. Suppose the jury here, on competent evidence but in spite of the Bland contract, had found that the reasonable cost of completing the job was $100,000.00. Would appellee Page stand on the verdict or the Bland contract? The answer to the problem presented is simple. The jury did not make this contract. The jury cannot rewrite this contract.

It should be noted that the contract provided in the event the contractor abandoned the contract and it was completed by a successful bidder that:

"In case of any increase in cost to the OWNER under the new contract, as compared to what would have been the cost under this contract, such increase shall be charged to the CONTRACTOR and the SURETY shall be and remain bound therefor. However, should the cost to complete any such new contract prove to be less then what would have been the cost to complete under this contract, the CONTRACTOR and/or his SURETY shall be credited therewith."

This provision seems to be fair to both parties and, as stated, we are unable to reach any conclusion other than that the contract should be enforced according to its terms. If contracts cannot be so enforced, then there is little reason to make them.

It is our opinion that the judgment in favor of appellee Page should be reduced by the difference between the jury finding of $14,990.00 and the Bland contract of $39,234.07 or $24,244.07.

The same error made in assessing the Page recovery is reflected in the recovery to appellee Smith. Substituting the Bland completion figure for the completion cost found by the jury, it appears that appellee Smith has been overpaid; hence, he was not entitled to recover anything.

Appellant also complains that the value of extra work done by Smith and allowed by the jury in the sum of $31,859.04 is without evidentiary support in some particulars. It refers to an item of $644.51 for repairing leaks in water tower, an item for $458.14 "for working at pump house," and say that these items are included in the general contract.

Appellant also states that an item of $1,205.54 refers to a transaction between Page and Smith in which it was not concerned.

Appellant also complains of many other items making up the total of this extra work but they seem to be complained about only because they appear in the Page-Smith contract.[1] The entire argument of Smith in reply to appellant here is:

"R. Ward Smith testified that all of the extra work that he did for the Water District was done at the direct request of the District's Engineer, Trimble, and Trimble assured Smith all during the progress of this extra work that he, Smith, would be paid by the District.

"The judgment rendered by the Trial Court for Smith against the District was based solely upon the extra work, not contained in the original contract, which Smith performed at the request of and for the benefit of the Water District."

We agree with Smith that appellant should pay for extra work performed for and accepted by the District. Extra work, however, is not work called for by the original contract, nor is it, as to appellant, work performed by Smith for Page not connected with or for the benefit of appellant.

As to the items specifically mentioned, we hold that they do not constitute extra work for which Smith is entitled to compensation

1. This matter is discussed under points 4 and 5.

and that they should be deducted from the sum allowed by the jury. See Rule 419, T.R.C.P.

Appellant's fourth and fifth points, briefed together, are that the Court erred in overruling its motions for an instructed verdict and for a summary judgment.

The basis of these motions was that the District had no contractual relations with Smith; that its contract with Page forbade subletting without its consent, which was not given; that Smith did not ask for judgment against the District for extra work, but only as against Page; that Smith, through his agent Fainter, agreed that extra work was to be done at unit prices and not at field cost plus 15%, as found by the jury; and that Smith had been paid for the extra work.

We will defer until later a discussion of the method of compensating Smith for extra work as there are more specific points dealing with this subject.

We consider the pleadings of Smith adequate to support a claim against appellant. Smith filed a cross action against the District and others in which he alleged his damages and prayed for relief either by way of rescission or by recovery of damages.

We believe that it is too late for appellant now to claim that Smith is not entitled to pay for his work because he was a subcontractor in violation of the contract. He was recognized and treated as having authority and the benefits of his services were accepted by the District and partially, at least, paid for by it.

The sixth point is that the Court erred in rendering judgment based on the jury finding that Smith had substantially completed the work under the Page contract on July 31, 1957.

This is the same question considered and determined by us in disposing of the first three points. Our ruling is the same.

The seventh point is that the Court erred in basing its judgment on the jury answer that only $14,990.00 was required to complete the work abandoned by Page and Smith. We have disposed of this point in appellant's favor under the first three points.

The eighth and ninth points are that the Court erred in basing its judgment on the jury findings that the District failed to furnish adequate supervision and direction of the work and that its engineer made unreasonable demands and requests upon Smith in connection with the work under his subcontract.

The jury also found that these hindrances did not financially harm Smith, and no judgment based on such findings was rendered in favor of Smith or against the District.

The tenth point is that the Court erred in basing its judgment on the jury finding of $31,859.04 as the actual field cost plus 15% for the extra work done by Smith, because there was no evidence or insufficient evidence to support it.

The jury also answered that Smith did not waive his right to receive additional compensation above the unit prices for extra work done at the request of appellant's engineer. This finding is also attacked as lacking sufficient evidentiary support, and is the subject of point 11.

The contract between the District and Page provided that extra work done by the contractor at the request of the engineer for the District should be compensated for as determined by one of these methods:

"Method (A) – By agreed unit prices; or
Method (B) – By agreed lump sum; or
Method (C) – If neither Method (A) nor Method (B) be agreed upon before the Extra Work is commenced, then the CONTRACTOR shall be paid the 'actual field cost' of the work, plus fifteen (15%) per cent."

The term "actual field cost" was defined by the contract and this definition was

embodied in the charge of the Court as a part of this issue.

Appellant, in arguing these points states:

"The only evidence in the record which might concern the actual cost of doing what was possibly referred to as 'extra work performed by Ward Smith for the Water District' is to be found in the testimony of Mrs. Ward Smith and the testimony of R. Ward Smith, together with certain of R. Ward Smith's exhibits. It appears from the testimony and the exhibits of R. Ward Smith that he pinned his claim for extra work to Defendant R. Ward Smith's Exhibit No. 38, and the supporting testimony and evidence, showing a claim for extra work in the total amount of $53,098.39.

\*    \*    \*    \*    \*

"R. Ward Smith's Exhibit No. 36 was supposed by his testimony to be the document supporting his claim for extra work aggregating $53,098.39, as shown by the Defendant Ward Smith's Exhibit No. 38. There was much examination and cross-examination of R. Ward Smith with respect to these exhibits and as to his claim in connection therewith, which is found interspersed throughout all of his testimony in the record.

\*    \*    \*    \*    \*    \*

"Had the jury found the figure $53,-098.39 claimed by R. Ward Smith it might then be contended that the jury had accepted his total figures for the cost. However, since they took a figure only slightly more than half his claimed figure, it is obvious that the jury did not accept his total figures for the cost of each of these projects. It is impossible to reconcile the figure found by the jury with any of the evidence given by R. Ward Smith, under which circumstances there was no evidence, or at least insufficient evidence to support the

answer of the jury to Special Issue No. 15, that the cost of such work was $31,859.04."

The testimony to which appellant refers as supporting the claim for extra work covers over 500 pages of the statement of facts and supporting and complex exhibits. We will not undertake a résumé of this testimony and these exhibits for the reason that appellant's contention, as we understand it, is that there is no evidence or insufficient evidence to sustain the specific figure found by the jury. Appellant apparently concedes that there is evidence to have sustained a higher figure than the jury found. It is our opinion that if the jury erred in regard to this issue, that the error was to appellant's advantage and is one which would not require reversal, at appellant's request, under Rule 434, T.R.C.P.

The problem presented under this point must be considered along with the deferred determination under points four and five of appellant's contention that Smith, under the jury finding, was not entitled to compensation based on "actual field cost" plus 15%, except as to "change order 3." The relevant jury findings are:

"SPECIAL ISSUE NO. 14:

"Do you find from a preponderance of the evidence that R. Ward Smith agreed to perform all of the work required of said Smith by the Water District (except as contained in Change Order 3) and claimed by said Smith as extra work in his Exhibit No. 38, on the basis of the agreed unit prices as set out in the original contract between R. Ward Smith and Holland Page? Answer 'yes' or 'no.'

"ANSWER: Yes.

"If you have answered the preceding Special Issue 'no', and only in that event, then you will answer the following Special Issue:

"SPECIAL ISSUE NO. 15:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence, to be the 'actual field cost' plus fifteen (15%) per cent of the extra work performed by Ward Smith for the Water District? Answer in Dollars and Cents, if any.

"ANSWER: $31,859.04.

\*    \*    \*    \*    \*    \*

"SPECIAL ISSUE NO. 16:

"Do you find from a preponderance of the evidence that the defendant R. Ward Smith waived his right to receive any additional compensation above the unit prices for the extra work and additions ordered by the District Engineer? Answer 'yes' or 'no.' If you find from the preponderance of the evidence that R. Ward Smith did so waive, you will answer 'yes'; otherwise, you will answer 'no.'

"ANSWER: No."

The Trial Court in its judgment gave effect to issues 15 and 16, and disregarded issue 14.

The District objected to Special Issue 14 for numerous reasons, including the following:

"The Defendant Water District objects and excepts to Special Issue No. 14 for the reason that as framed such issue states an impossible theory, that is, it inquires of the jury whether Smith agreed to accept unit prices for any kind of extra work, when it is obvious from the record that any and all types of extra work could not be classified under unit prices."

These objections are made the basis of appellant's 25th point.

■ From our somewhat limited understanding of the facts and figures contained in this huge record, we agree with appellant, acquiesced in by Smith and not questioned by Page, that this issue improperly placed too heavy a burden upon the jury to entitle it to recognition by the Trial Judge in formulating his judgment. It follows that judgment was properly rendered upon the jury's answer to issue 15 disregarding issue No. 14, since the submission of a proper issue respecting the method of compensation for extra work, as provided in the contract, assuming such issue to be raised by the evidence, was waived by failure to request its submission.

We do not comprehend the relevancy of issue 16 finding that Smith did not waive his right to be compensated for extra work by the field cost method. Unless an agreement was established to accept one of the other contractual methods for compensation for extra work, then the field cost method was the only proper method under the contract for payment for this work. We find no evidence that Smith surrendered this right in a manner sufficient to bind him.

■ Point 12 is that the Court erred in refusing to permit counsel for appellant to cross examine the witness, Mrs. Ward Smith, concerning records about which she had testified. We quote from appellant's brief regarding this point:

"Upon establishing by the witness that these records were the ones which supported the books from which the witness had previously testified on direct examination, counsel suggested to the court that the cross-examination of the witness could not be continued under those circumstances. The court then said, 'I think you can. Let's go ahead. You have copies there. Let's move on.' Upon counsel stating to the court that he had never seen the copies, the court then said, again commenting upon the evidence:

" 'Well, the evidence here shows that they were given to you. You can ask

her some other questions. We are not going to stop right here. We have got twenty minutes left, so let's use it, gentlemen. Let's go on.'"

It is our opinion that the action and language of the Court merely reflects the manner in which the Court was properly conducting the trial and that it did not deprive or intimate that appellant was to be deprived of its right to cross examine the witness. It was counsel who expressed his inability to cross examine.

█ Point 13 is that the Court erred in not granting appellant's motion for a mistrial based on the following occurrence, the description of which we take from its brief:

"Late in the afternoon of August 16, 1960, after the witness Mrs. Ward Smith had testified on direct examination, counsel for the Water District started to cross-examine Mrs. Smith, who had testified, over numerous objections by counsel for the Water District, concerning what the books of R. Ward Smith Construction Company showed with respect to certain categories of expenses. The witness had testified that she had the original records with her to support all the testimony she was giving with reference to the case, including invoices on materials, and costs, and checks.

"At one point in the proceedings counsel called to the court's attention that certain previous objections were to go to all items on an exhibit and asked for the same ruling and exception on all items, to which the court promptly replied that the record would so show. Counsel for R. Ward Smith interjected that if R. Ward Smith's theory was incorrect, there was nothing to the whole thing anyway, to which the court replied, 'That's right.' Counsel for the Water District then stated that such was the reason for counsel's objection, that counsel for R. Ward

Smith should establish other matters first before he put all of the evidence as to costs before the jury, to which the court replied:

"'Somebody should have established a whole lot more before we got to this point. Let's go on.'"

The remark of the Court would have applied to one party as well as another. In fact, it seems to us to apply more to Smith and Page who had the burden of making out a case. In any event, we hold the error, if any, harmless under Rule 434, T.R.C.P.

Points 14 through 20, inclusive, briefed jointly, complain of the failure of the Court to submit a definition and special requested issues to the jury.

The definition requested was in connection with issue No. 2, finding the cost of completing the job, which finding we have held not to be of any effect.

The issues requested are:

"2. Do you find from a preponderance of the evidence that Col. Trimble did not promise extra pay for any work claimed as extra by Smith (except for the $5,000.00 item on the Scott line)?"

"8. Do you find from a preponderance of the evidence that defendant Smith, by accepting payments after Change Order Three without protest to the Board of Directors of the Water District, induced such Board of Directors to a change of position (By the words 'change of position' as used in the foregoing issue is meant any act or failure to act caused by reliance upon conduct of another, or silence of another, and which act, or failure to act, causes financial detriment.)"

"10. Do you find from a preponderance of the evidence that defendant Ward Smith failed to complain to the Board of Directors of the water district

of his objections, if any he had, to the engineer on the job.

"11. Do you find from a preponderance of the evidence that defendant Ward Smith failed to complain to the Board of Directors of the water district of his objections, if any he had, to changes in the lines.

"12. Do you find from a preponderance of the evidence that defendant Ward Smith failed to complain to the Board of Directors of the water district of his objections, if any he had, to installation of new lines.

"13. If you have answered Special Issues Nos. 9, 10, 11 and 12, or any one or more of them Yes; then answer the following Special Issue.

"Do you find from a preponderance of the evidence that by such failure, if any, you have found, defendant Smith waived his right to complain. By the word 'waived' is meant the voluntary relinquishment of a known right."

■ All of the requested issues except No. 2 apply to the claim of Smith for damages which claim was denied by the jury. Appellant has only an academic interest in these issues which is not sufficient to require an adjudication of the points concerning them.

■ We believe requested issue 2 was also properly refused. It was necessary that Smith agree to be paid a lump sum price or unit prices before he could be required to accept such method of compensation for extra work. If there was no agreement, the field cost method applied. This problem could not be resolved by a finding that a "promise" was or was not made to give Smith "extra pay" for extra work. The rights of Smith were contractual, not promissory.

The 21st point relates to the submission of the 1st special issue inquiring about substantial completion of the Page contract. We have previously discussed the substance of this point except that such issue was not supported by pleadings. In the Second Amended Original Petition of Page he pleaded that he had " * * * in good faith completed, or substantially completed, the work called for by the contract. * * *"

The 22nd point is that the Court erred in submitting to the jury the issue inquiring about the reasonable cost of completing the contract.

We have disposed of this issue in favor of appellant under the first three points.

The 23rd point relates to the submission of an issue to the jury pertinent to the theory of rescission advanced by Smith. This theory was not carried into the judgment, and discussion of this point is not required.

■ The 24th point is that the Court erred in submitting to the jury issue 13 inquiring if the engineer for the District "waived" the provision in the contract that no claim for extra work would be allowed unless ordered in writing by the engineer, the jury's answer being in the affirmative. The objections were that the issue was not supported by pleadings or evidence, and that "waived" was not defined; also that it was a comment on the weight of the evidence.

■ The undisputed evidence shows that the engineer for the District ordered most of the extra work verbally, and that the District accepted the benefit of this work. The Court defined "waiver", but not "waived." We believe that waiver was shown as a matter of law. This provision is highly technical, requiring little evidence to constitute a waiver of it. This holding makes the form of the issue immaterial. We have not searched the pleadings for an allegation of waiver but we believe the pleadings in which pay for ex-

tra work was sought are broad enough, absent exception, to embrace this issue.

The 25th point relates to issue 14 which inquired whether or not Smith agreed to do extra work for contract prices. We have heretofore discussed this issue and its non-effect. Appellant here states that the error in submitting this issue is immaterial. We agree.

The 26th point is that the Court erred in submitting the issue inquiring about the amount of "actual field cost" for extra work. We quote appellant's summary of its objections to this issue:

"These objections were that there was neither evidence nor sufficient evidence nor pleading to support the submission of the issue, that it submits an erroneous measure of damages, that it assumes a contractual obligation by the District to pay Ward Smith actual field cost for extra work contrary to undisputed evidence that no such agreement was ever made; that it is a general charge; that the explanatory instruction contained many items of purported cost which have no support in the evidence and as to which there is no evidence at all; that the issue is a comment on the weight of the evidence since it assumes to indicate to the jury that a contractual relationship existed between Ward Smith and the Water District; whereas the evidence was undisputed that no such relationship existed; and that the issue is confusing and will cause the jury to bring in an improper verdict and pave the way for double recovery because not allowing the jury to deduct sums which have already been paid Ward Smith for extra work."

The Court defined "actual field cost" in connection with this issue. We do not copy such definition, but it substantially and accurately corresponds with the defi-

nition of this term as contained in the Page contract. Obviously, this was a correct definition.

We have previously discussed the jury answer to this issue and found fault with some of the items constituting it. These will be noted in the judgment we render. The evidence to sustain the jury's answer to this issue is referred to in our discussion of points 10 and 11 and will not be repeated here.

Appellant's objections to the submission of this issue are overruled.

The 27th point is that the Court erred in submitting issue 16 to the jury inquiring if Smith waived his right to receive extra pay for extra work. The jury answered "No."

We have heretofore stated that there is no evidence to support an affirmative answer to this issue. We do not believe the issue should have been submitted. If this is correct, then its form is immaterial. We do say, however, that the issue is not subject to the objection that it is a comment on the weight of the evidence.

The 28th point is in relation to jury issue 15, discussed above under point 26. The complaint here is that while the charge as submitted to the jury required an answer to this issue only if it answered preceding issue 14 "No," and the jury having answered such issue "Yes," did not answer issue 15 originally but the Court orally instructed the jury, before accepting its verdict, to disregard such instruction, return to the jury room and answer issue 15, and this the jury did.

Appellant cites Rules T.R.C.P. 271, 272, 274, 275, 286, 293 and 295, to establish error in the actions of the Court.

We believe that Rule 286, which provides that "After having retired, the jury may receive further instructions of the court touching any matter of law,

either at their request or upon the court's own motion", authorized the Court to instruct the jury as he did. This rule required such instruction to be in writing, and it was error for the Court to instruct the jury orally. This error, we hold harmless under Rule 434, T.R.C.P.

■ The 29th through the 31st points are that the Court erred in overruling certain special exceptions.

The District excepted to the allegation by Page "that the Water District's engineer arbitrarily refused to approve the work and issue a certificate of completion, upon the grounds that the allegation was inflamatory and prejudicial and that it did not plead sufficient facts by such general allegations to enable the Water District to prepare and defend the suit."

This objection was properly overruled. Only proof of an arbitrary act could be prejudicial, not mere pleading. We believe the District knew, or should have known, the nature of an arbitrary act and with such understanding as to prepare its defense to the allegation made.

The District excepted to the pleading of Smith on the ground that certain of his allegations "were conclusions, were vague and indefinite, and did not allege sufficient facts to apprise" the District of the evidence which it might be required to meet.

We will not set out the pleadings excepted to for the reason that they pertain to hindrances pled by Smith in his plea for rescission. This feature of the case is not before us for review.

The district also excepted to the pleading of Smith "for the reason that said pleadings do not allege any facts showing any contractual relations between the Water District and R. Ward Smith and his partner, or either of them, and that for such reason no cause of action was as-

serted or could be asserted against the Water District."

■ The relationship between the District and Smith has been dealt with fully in this opinion. It was not, in our opinion, necessary for Smith to allege that he had a contract with the District.

Having disposed of all points presented, we now approach the task of rendering judgment consistent with the legal conclusions reached herein. Before attempting this duty, we called upon counsel for their views assuming as correct the major rulings now made official by us.

Page and Smith and the District agree that as to Page the proper judgment, based on disallowance of liquidated damages, substitution of Bland completion cost for jury finding of cost of completion and allowance of jury finding for extra work, should be $3,917.18. This figure does not take into consideration the items, totaling $2,-308.19, which we have held improperly included in jury allowance for extra work. Thus calculated, the judgment for Page is reduced to $1,608.99.

Under the rulings we have made it appears that Smith has been overpaid for the work done by him and he is entitled to no judgment against the District. We do not adjust accounts between Page and Smith as no request for such relief is before us.

The judgment of the Trial Court is reformed and judgment is here rendered that appellee Page recover of and from the District $1,608.99; that appellee Smith take nothing by his suit; that as to Smith the District recover its costs in the Trial Court; that the cost of appeal be assessed one half against Page and one fourth each against Smith and the District. As thus reformed, the judgment of the Trial Court is affirmed.

Reformed and affirmed.