HIRSCH, et al, Respondents, v. LEGEROS, et al, Appellants.

(235 N. W. 361.)

(File No. 6845.   Opinion filed May 11, 1931.)

*Hasche & Foley* and *Matthew J. Schmidt,* all of Watertown, and *T. R. Johnson,* of Sioux Falls, for Appellants.

*Odean Hareid,* of Sioux ·Falls, for Respondents.

ROBERTS, J. The defendant George Legeros, on January 8, 1925, entered into a lease with the plaintiffs for the use of their building in the city of Sioux Falls. The term of the lease was for a period of five years commencing on March 1, 1925. Billiard and pool hall equipment was installed in the building, and the place was conducted as a pool hall until March 1, 1927, when, on account of financial embarrassment, the business was discontinued.

The plaintiffs allege in their complaint that George Legeros entered into the lease for and in behalf of the Legeros Bros., a partnership consisting of George Legeros, the party named as lessee in the contract, and his brother, Peter Legeros. For a first cause of action the plaintiffs allege that by reason of the negligence and carelessness of the defendants the building was damaged to the amount of $474, and upon a second cause of action the plaintiffs claim to be entitled to the difference between the amount provided in the lease agreement and the rental specified in a new lease; that by reason of the abandonment of the premises plaintiffs were compelled to relet the same at a reduced rental, and the premises were thus leased for the benefit of the defendants. Separate answers were interposed. It is denied by each of the defendants that the lease was entered into in behalf of a partnership, and each defendant denies that they were copartners during all of the times mentioned in plaintiff's complaint, but admit "the fact to be that during a portion of said time the said defendants were co-partners." They affirmatively allege that at the time of the surrender of possession of the premises on March 1, 1927, an agreement was made and entered into between the defendant George Legeros and the plaintiffs that in consideration of the payment of $600 the plaintiffs agreed to cancel the lease, and that $350 of said amount had been paid, and that the defendant George Legeros by his answer offered to pay the balance. The action was tried to the court without a jury and findings and judgment were entered for the plaintiffs. From such judgment and order denying motion for new trial, the defendants appeal.

Defendants first contend that the testimony fails to show the existence of a partnership. Unless there is a clear preponderance of the evidence against the finding of the trial court that at the time of the execution of the lease and during all the time the building was occupied pursuant to the lease the defendants were

copartners, this court is bound by such finding. In other words, we cannot interfere with such conclusion of the trial court, although it may be opposed to our view considering the weight of the evidence, if from a review of the entire record it can be said that the finding is not contrary to the clear preponderance of the evidence. It must be conceded that there is no testimony of an agreement between the parties and there is no testimony to the effect that it was the express intention or purpose of defendants to form a partnership. However, a partnership may arise from the conduct of the parties if it can be determined therefrom that such intention in fact existed. Since there was no express agreement, we must consider the manner of conducting and the circumstances surrounding their business transactions to arrive at the intention of the parties. While the building was being remodeled and prepared for occupancy, the defendants displayed a large banner or sign across the front of the building stating that a billiard parlor would be opened in the building by the Legeros Bros. Later this banner or sign was displaced by a more permanent sign bearing the words, "Brunswick Recreation Parlors. Legeros Bros." Peter Legeros represented to patrons that he was interested in the business as a partner. George Legeros applied to the city commission and secured the issuance of a license in his name to run the pool hall for the year 1925. His brother Peter made a similar application and secured the issuance of a license in his name for the year 1926. Notes and chattel mortgages in connection with the business enterprise were signed, "Legeros Bros. by George Legeros," and other notes and mortgages were signed, "Legeros Bros. by Peter Legeros." A property statement was furnished to the Minnehaha National Bank, Sioux Falls, S. D., signed, "Legeros Bros. by George Legeros." It was stated therein that each partner contributed one-half of the amount invested in the business. We are of the view that the evidence is sufficient to sustain the finding of the trial court that the defendants were copartners.

The court made no specific finding on the controverted point as to whether or not the parties entered into an agreement to cancel the lease, but did make a finding as follows: "That there was no accord between the Plaintiffs and the Defendants for the payment of Plaintiff's claim against the defendants and there was no satisfaction of the purported accord, claimed by the Defendants,

and said claimed accord was not in writing and has not been executed or satisfied."

■ The principle of an accord and satisfaction is not applicable to an agreement for the cancellation of a lease of real property. It is alleged by way of an affirmative defense that pursuant to an agreement of the parties the lessee "did, thereupon immediately deliver all the keys to said premises to the plaintiffs and did deliver up full and complete possession of the said premises to the plaintiffs, and that said plaintiffs did thereupon enter into possession of said premises immediately." Plaintiffs contend that such agreement would constitute an alteration of the contract or lease, and that under the provisions of section 908, Rev. Code 1919, the lease could be altered only by a contract in writing or by an executed oral agreement, and the full amount of the alleged settlement not having been paid, the oral contract could not be given any effect.

"A surrender, as the term is used in the law of landlord and tenant, is the yielding up of the estate to the landlord, so that the leasehold interest becomes extinct by mutual agreement between the parties. While it is essential that the lessor and lessee mutually agree to the termination of the term, such agreement may be either express or implied. The rescission of a lease, when by express words, is called an 'express surrender' or a 'surrender in fact'; and a surrender by operation of law occurs where the parties without express surrender do some act or acts from which it is implied that they have both agreed to consider the surrender as made. What does or does not constitute a surrender of the lease and an acceptance thereof must be determined from all the facts in each particular case." 35 C. J. 1084.

■ The defense is not that the provisions of the lease have been modified, but is that there was a surrender of the leased premises or a rescission of the contract. Section 904, Rev. Code 1919, provides: "A party to a contract may rescind the same in the following cases only: * * * 5. By consent of all the other parties." There may be a cancellation or rescission of a written lease or a surrender of the premises by an oral or implied agreement.

■ It is the undisputed evidence that on March 1, 1927, plaintiff Paul F. Hirsch and C. H. Ormiston, who had transacted

the business with the defendants in leasing the premises on behalf of the plaintiffs, accompanied by their attorney, interviewed the defendants. The attorney stated at the time that in view of the fact that it was winter, and that the plaintiffs were obliged to heat the building to protect it, they would accept the key and occupancy of the building for the purpose of protecting the property, but that such action would not in any manner release the defendants from liability under terms of the lease. There is some conflict in the evidence as to whether or not the keys to the building were delivered to the plaintiffs at that time or on the following day. The defendants testified that on the afternoon of the following day Hirsch and Ormiston returned and inquired what the defendants were going to do with reference to the lease; that George Legeros replied, "I haven't decided to do anything; I lost all the money I had in here, and I don't know what I am going to do"; that Ormiston said they didn't want the defendant George Legeros to go through bankruptcy and that if $600 was paid they would release him from the lease; that George Legeros replied that he didn't have $600 and that they asked him if he could not pay $50 per month for one year, and defendant said that he would try to do that. George Legeros further testified that he made payments pursuant to such agreement by checks to the amount of $300, and there was received in evidence six canceled checks executed by the defendant George Legeros, drawn on the First National Bank of Watertown, S. D., in the sum of $50 each, payable to Hirsch Bros. They were dated at intervals from March 15, 1927, to September 24, 1927. George Legeros, then residing in Watertown, wrote to Hirsch Bros. on July 16, 1927, as follows: "I really cannot see how I can make the payments of $50 for July and August on the $600 for the lease as we agreed, I will therefore ask you for extension of two months and I am sending a certificate of ten shares of stock of our Central Heating Company as security for the payment of this $100 and this stock will be sent to me when I pay the July and August payments." This letter was replied to as follows, under date of July 11, 1927: "We are returning the ten shares of heating stock. We know nothing about the company or the value of this stock. No doubt there are people in Watertown who are familiar with this stock who would be glad to make a loan on it so you will be able to send the cash."

George Legeros acknowledged receipt of the letter and also the stock, and stated that he had made arrangements for the $50 payment for July and inclosed a check for that amount. A check for $50 dated October 22, 1927, was sent to the plaintiffs, and the same was returned with the explanation that plaintiffs had employed an attorney and placed the matters in his hands. Under the issues presented by the pleadings and evidence submitted, the findings of the trial court are not warranted.

The judgment and order appealed from are reversed.

CAMPBELL, WARREN, and RUDOLPH, JJ., concur.

POLLEY, P. J., absent and not sitting.