[Sac. No. 6819.   In Bank.   Feb. 6, 1959.]

HAROLD L. HOTLE et al., as Executors, etc., Appellants, v. EVELYN F. MILLER, as Special Administrator, etc., Respondent.

Donald M. Scott and Lounibos & Lounibos for Appellants.

Leon J. Libeu and Frank W. Finn for Respondent.

TRAYNOR, J.—Plaintiffs, executors of the will of Seymour Frizelle, appeal from a judgment for defendant, special administrator of the estate of Jennie Frizelle, in an action for reformation of a written agreement executed in January, 1953. The judgment was entered upon the sustaining of a general demurrer to the first amended complaint without leave to amend.

The complaint alleged:

On November 6, 1940, Seymour and Jennie opened an account with the Bank of Sonoma. The deposit agreement provided that "We hereby agree with each other and the bank, that all moneys now or hereafter deposited by us or either of us with the bank in this account shall be so deposited

and shall be received and held by the bank with the under-
standing and upon the conditions that said money as deposited,
without consideration of its previous ownership, and all
interest therein (if any there be) shall be the property of
both of us as joint tenants and shall be payable to and col-
lectable by either of us during our joint lives, and after death
of one of us shall belong to and be the sole property of the
survivor, and shall be payable to and collectable by such
survivor.''

In January, 1953, Seymour and Jennie orally agreed that
regardless of how title was held, all of their property had been
acquired as their community property, that ''all of said prop-
erty, and any and all property which they might thereafter
acquire, should be held and owned by them as community
property regardless of the way the record title might stand
at any time,'' and that they would execute a written agree-
ment so providing. They employed an attorney to draft the
written agreement, which they executed in the mistaken
belief that it correctly expressed their oral understanding.
The attorney's draft, however, set forth a defective descrip-
tion of the existing property and made no reference to prop-
erty thereafter to be acquired.

On October 20, 1954, Seymour executed a will in which he
undertook to dispose of all of the community property, and
Jennie executed a waiver of claim to her share of the com-
munity property in view of her election to accept the terms
of the will.

Seymour died on March 2, 1955. The balance in the bank
account was then $42,357.14. Jennie died on July 17, 1955.

Plaintiffs contend that they have stated a cause of action
for reformation of the 1953 agreement, that under the agree-
ment as reformed the balance of the account is community
property, and that they are therefore entitled to administer
it as such pursuant to the terms of the will and Jennie's
waiver. Defendant contends, on the other hand, that whether
reformed or not the agreement cannot operate to change the
rights of the parties in the joint tenancy bank account, that
title to it therefore vested in Jennie when she survived Sey-
mour, and that since there is no allegation that any other
property is affected by the agreement, its reformation would
serve no purpose.

■ The complaint states a cause of action for reformation
of the 1953 agreement on the ground of mutual mistake (Civ.
Code, § 3399; *Murphy* v. *Rooney*, 45 Cal. 78; *Oatman* v. *Nie-*

*meyer,* 207 Cal. 424, 425-427 [278 P. 1043] ; see *Bailard* v. *Marden,* 36 Cal.2d 703, 708 [227 P.2d 10] ) if such reformation would serve any interest of plaintiffs. (*Auerbach* v. *Healy,* 174 Cal. 60, 63 [161 P. 1157].) It would if the 1953 agreement could affect the rights of the parties in the joint account.

Defendant invokes former section 15a of the California Bank Act (1 Deering's Gen. Laws, 1937, Act 652, pp. 221-222), in effect at the time the joint account was opened, to establish that the 1953 agreement cannot operate to defeat Jennie's right of survivorship. That section provided in part : ''When a deposit shall be made in any bank by any person or persons whether minor or adult in the names of such depositor or depositors and another person or persons, and in form to be paid to any of them or the survivor or survivors of them, such deposit and any additions thereto made by any such persons after the making thereof, shall become the property of such persons as joint tenants, and the deposit together with all dividends or interest thereon, shall be held for the exclusive use of such persons and may be paid to any of them during their lifetime or to the survivor or survivors after the death of one or more of them, and such payment and the receipt or acquittance of the person or persons to whom such payment is made shall be valid and sufficient release and discharge to such bank for all payments made on account of such deposit prior to the receipt by such bank of notice in writing not to pay such deposit in accordance with the terms thereof. *The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor or depositors may be a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors.*'' (Italics added.) Since this section was in effect at the time the account was opened, it became a part of the contract of the parties. (*Comastri* v. *Burke,* 137 Cal.App.2d 430, 434 [290 P.2d 663].) Defendant accordingly contends that in the absence of fraud or undue influence, plaintiffs cannot now show that the parties did not intend that title should vest in the survivor.

There is no doubt that under the statute the making of the deposit is conclusive evidence of the intention of the depositors at that time to vest title in the survivor. It does not follow, however, that the statute compels depositors there-

after to remain frozen to that intention. It in no way deprives the depositors of their freedom of contract to make subsequent agreements changing their interests in the account. Such freedom is expressly recognized in Civil Code, section 1698, which provides that a "contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." Section 15a cannot reasonably be interpreted to impair this freedom to alter one contract by another. There is nothing in its language that would justify such interpretation. The intention to which it refers is the intention manifested by the making of the deposit in the specified form and thus necessarily the intention existing at the time that form is used. Its constrained language cannot be enlarged to nullify any subsequent contracts between the depositors and thereby to repeal by implication Civil Code, section 1698.

This interpretation of section 15a in no way departs from the parol evidence rule. "Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations." (*Estate of Gaines,* 15 Cal.2d 255, 265 [100 P.2d 1055].) Obviously, however, it has no corresponding power to preclude future negotiations. "Any contract, however made or evidenced, can be discharged or modified by subsequent agreement of the parties. No contract whether oral or written can be varied, contradicted, or discharged by an antecedent agreement. Today may control the effect of what happened yesterday; but what happened yesterday cannot change the effect of what happens today. This, it is believed, is the substance of what has been unfortunately called the 'parol evidence rule.'" (3 Corbin on Contracts, § 574, pp. 222-223; see also 3 Williston on Contracts [rev. ed.], § 632, p. 1817; *McKeon* v. *Giusto,* 44 Cal.2d 152, 156-157 [280 P.2d 782], and cases cited.) *Paterson* v. *Comastri,* 39 Cal.2d 66 [244 P.2d 902], *Medeiros* v. *Cotta,* 134 Cal.App.2d 452 [286 P.2d 546], *Comastri* v. *Burke,* 137 Cal.App.2d 430 [290 P.2d 663], and other cases interpreting section 15a of the Bank Act are not to the contrary, for none of them involved a subsequent agreement changing the rights of the depositors in a joint account.

■ Even if section 15a were interpreted to deprive the depositors of their freedom to make subsequent contracts changing their rights in the joint account there could be no such deprivation following the repeal of that section in 1949. Section 852 of the Financial Code based thereon not only omits the provision making the form of the deposit conclusive evidence of the intent of the parties to vest title in the survivor, but expressly recognizes that the deposit agreement may not accurately reflect the interests of the depositors in the account. It provides that the bank may refuse payment after notice from a depositor "not to permit withdrawals in accordance with the terms of the account. . . . After receipt of such notice, a bank may refuse, without liability, to honor any check, receipt, or withdrawal order on the account pending determination of the rights of the parties."

■ Although the repealed provision of section 15a was a part of the joint deposit agreement entered into while it was in effect, since its repeal, any restriction it might theretofore have imposed on the depositors' power to contract, could survive only by virtue of its continued existence as part of the contract of the parties. The parties could not, however, contract away their power to contract in the future, for the law, not private agreement, determines the essential elements of a valid contract. (See 6 Corbin on Contracts, § 1295, pp. 158-161.) ■ A husband and wife may change the character of their property by agreement. (Civ. Code, § 158; *Estate of Wieling*, 37 Cal.2d 106, 108 [230 P.2d 808].) [9] Clearly implicit in the 1953 agreement in this case was the mutual abrogation by the parties of any conflicting provision in their joint tenancy agreement. Their abrogation was effective, since they were free to contract in 1953 without regard to any limitations imposed by the repealed provision.

*Ehrman* v. *Rosenthal*, 117 Cal. 491 [49 P. 460], and *Fitts* v. *Mission Health etc. Shop*, 58 Cal.App. 362 [208 P. 691], cited by defendant are not to the contrary. Those cases correctly hold that two parties to a tripartite agreement cannot change it to the prejudice of the third party. In the present case the bank will in no way be prejudiced by recognizing its depositors' subsequent agreement between themselves.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., and Spence, J., concurred.

McComb, J., dissented.