TEXAS CONSTRUCTION ASSOCIATES, INC., et al., Appellants,

v.

Gilbert BALLI, d/b/a C. C. Plumbing Company, Appellee.

No. 1178.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 31, 1977.

Rehearing Denied Dec. 8, 1977.

Bruce Waitz, San Antonio, for appellants.

John D. Barrow, Nicolas & Morris, William R. Anderson, Jr., David Seidler, Sorrell, Anderson & Sorrell, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

This appeal results from a suit instituted by appellee, Gilbert Balli, d/b/a C. C. Plumbing Company, against Sam Hausman Meat Packers, Inc. and the appellants, Texas Construction Associates, Inc., and Westchester Fire Insurance Company, for recovery on a contract between C. C. Plumbing Company, as subcontractor, and Texas Construction Associates, Inc., as general contractor, for materials furnished and work completed on the Sam Hausman Meat Packers, Inc., meat processing facility, in Corpus Christi, Texas.

Suit was brought pursuant to Tex.Rev. Civ.Stat.Ann. art. 5472d (Supp.1976),[1] an act providing for bonds to pay liens or claims. Appellant Westchester Fire Insurance Company, as surety for Texas Construction Associates, Inc., was named defendant on the Article 5472d bond. Appellees, Martin D. Kirbow and A. J. McKenzie d/b/a Standard Plumbing Company, intervened in this cause as supplier of materials to C. C. Plumbing Company and brought suit against Texas Construction Associates, Inc., and Westchester Fire Insurance Company under Section 6 of Article 5472d, and against C. C. Plumbing for payment of an overdue account. Subsequently, C. C. Plumbing took a nonsuit as to Sam Hausman Meat Packers, Inc. Trial was before the court without a jury.

Hereafter Texas Construction Associations, Inc., will be called Contractor; Westchester Fire Insurance Company, Surety; Gilbert Balli d/b/a C. C. Plumbing, Subcontractor; Martin D. Kirbow and A. J. McKenzie d/b/a Standard Plumbing Supply Company, Materialman; and Sam Hausman Meat Packers, Inc., Owner.

Owner entered into a contract with Contractor for the construction of a meat processing facility in Corpus Christi, Texas, during May of 1974. Contractor then entered into an agreement with Subcontractor to perform the plumbing work for the Owner's project. In June of 1974, Contractor engaged Surety on a statutory payment bond complying with the provisions of Article 5472d.

It appears from the record that a primary part of subcontractor's agreed duties on the project was to install a heated, pressurized cleaning system which included a "Malsbury" heating unit, pipes to transport the heated water across the roof and down the walls, and cleaning facilities at seven different stations. Prior to installing the system Subcontractor disapproved of placing the pipe for this system under the roofing materials, i. e., insulation tar paper and tar and suggested that he might place the pipe on top of the roofing materials thereby making the pipe more accessible in the event of any future leaks. The request was denied and pipe was laid under the roofing material. Although Contractor and Subcontractor originally agreed to have Subcontractor connect one "Malsbury" unit, apparently Owner and Contractor decided, after all the pipe for the original system was laid, to purchase two additional "Malsbury" units to add to the system. At this time, the superintendent for Contractor orally promised to pay Subcontractor "extra" for installing the additional units. At trial it was shown that the addition of further "Malsbury" units could cause greater vibration in the pipes than would the originally installed unit by itself.

After the opening of the plant in June of 1975, water began leaking out of the cleaning system pipes. No specific reason was established as causing the leaks. The plumbing inspector for Corpus Christi testified, however, that he observed no faulty workmanship in Subcontractor's plumbing and that the work met Corpus Christi plumbing standards. Subsequently, the entire system installed by Subcontractor was replaced.

During the course of construction, Materialman sold to Subcontractor plumbing supplies and materials worth approximately $5,800. Subcontractor, however, neglected to pay Materialman for such materials for no apparent reason other than Subcontractor had not been fully paid for his labor and materials by Contractor. Contractor admitted that it had actual knowledge during February of 1975 that Subcontractor owed Materialman but was not sent written notice under Section 2b(1) of Article 5453 of the unpaid materialman's claim until April 17, 1975. Subsequent to that notice, Contractor refused to pay Subcontractor's invoices. Additional statutory notices were sent to Contractor and Owner on May 28, 1975, in order to comply with the notice requirements of Article 5453.

Final judgment was rendered on October 8, 1976, which granted Subcontractor a

---

1. All statutory references are to Vernon's Civ. Stats.Ann. unless otherwise noted.

joint and several judgment for $4,320.21 and $1,900.00 attorney fees together with interest on both sums against Contractor and Surety. Materialman was awarded a joint and several judgment against Subcontractor, Contractor and Surety for $5,843.47, the price of the materials furnished Subcontractor, and $2,000.00 attorney fees with interest on both sums. It was further ordered that Contractor and Surety have judgment over against Subcontractor in the sum of $5,843.47 plus interest when such sum is paid to Materialman.

■ No motion for new trial was filed, and findings of fact and conclusions of law were neither requested nor filed in this appeal. Appellants did bring forward a statement of facts and therefore it must be presumed upon appeal that the trial judge found every fact necessary to sustain the judgment, provided such fact is raised by the pleadings and is supported by the evidence. *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.Sup.1962); *Oxford Development Co. v. Eppes*, 422 S.W.2d 583 (Tex.Civ.App.—Corpus Christi 1967, no writ); 4 McDonald Texas Civil Practice § 16.10 (1971). Further, in considering the sufficiency of the evidence in support of presumed findings, we must construe the evidence in the light most favorable to the judgment and disregard all evidence to the contrary indulging every legitimate conclusion which tends to uphold the judgment. *Bradshaw v. Holmes*, 246 S.W.2d 296, 297 (Tex.Civ.App. —Amarillo 1951, writ ref'd n.r.e.).

■ By appealing on such record appellants assume the burden of pointing out undisputed facts negating one or more presumed findings essential to the validity of the judgment or of pointing out the absence of evidence to support such findings. *Threet v. Texas Employers' Insurance Ass'n,* 516 S.W.2d 276 (Tex.Civ.App.—Tyler 1974, no writ); *Gibson v. Henderson,* 136 S.W.2d 634 (Tex.Civ.App.—Galveston 1940, no writ); *Hart v. Huie,* 15 S.W.2d 654 (Tex. Civ.App.—San Antonio 1929, writ dism'd).

■ Contractor and Surety by their seventh and eighth points of error, contend the court's conclusion that Subcontractor's work was performed in a good and workmanlike manner is not supported by sufficient evidence and that this decision erroneously prevented certain offsets. By their ninth point of error they complain that the trial court's refusal to grant an offset in the judgment was error because Subcontractor failed to perform work on time. Thus the judgment was against the great weight and preponderance of the evidence. We do not agree. We have had no undisputed facts pointed out to us nor have we been shown a lack of evidence to support the trial court's conclusion. Contractor's and Surety's points seven, eight and nine are overruled.

■ Contractor and Surety contend in their second point of error that the trial court erred in entering a judgment which awarded attorney's fees in favor of both Materialman and Subcontractor because they both sued Contractor and Surety for the same debt. We find there was evidence to support the trial court's implied finding that Materialman and Subcontractor were not suing for the same debt. Thus, this second point is overruled.

In their first point of error, Contractor and Surety complain that the trial court erred in granting Materialman the $5,843.47 judgment against them because Materialman failed to comply with the notice requirements of Article 5453 § 2b(1) as to $1,651.19 of the entire $5,843.47 judgment granted. In this connection, their contention is apparent from an inspection of Article 5472d § 4 which forms the basis of Materialman's claim. It states that there are two ways in which to perfect a claim under its terms:

"4. A claim to be enforceable against the bond may be perfected either in the manner prescribed for fixing and securing a lien by Article 5453 hereof, or . .

a. By giving to the original contractor all applicable notices of claims required by Article 5453; and in addition thereto, by giving to the corporate surety, in lieu of to the owner, all notices therein required to be given to the owner; . . ."

Thus, in either case, the requirements of Article 5453 must be met to perfect a claim. For purposes of Article 5453, Materialman would be classified as a subcontractor under Article 5452 § 2f which provides:

"A subcontractor is any person or persons, firm or corporation who has furnished labor or materials or both as defined above to fulfill an obligation to an original contractor or to a subcontractor to perform all or part of the work required by the original contract. . ."

Further, because no retainage is involved here, Article 5453 § 2b(1) is the notice provision which would apply in this case. It provides in pertinent parts:

"2. If the claimant for such lien is other than an original contractor, such claim *shall not* be valid or enforceable unless the claimant shall also have complied with the applicable notice requirements hereafter set forth which shall be conditions precedent to the validity of such claims:

\* \* \* \* \* \*

b. Excepting instances of retainages for which notices have been given in accordance with the preceding subparagraph, the claimant shall give the applicable notice or notices described, as follows:

(1) Where the claim consists of a lien claim arising from a debt incurred by a subcontractor, the claimant shall give *written notice* of the unpaid balance of such claim to the original contractor not later than thirty-six (36) days after the tenth (10th) day of the month next following each month in which claimant's labor was done or performed in whole or in part or his material delivered in whole or in part . . . ." (Emphasis supplied.)

■ Materialman admitted at trial and in its brief that written notice was not sent to Contractor until April 17, 1975. Applying the above formula to the facts of this case, the written notice of April 17 was sufficient to perfect the claim for only the labor and materials delivered after March 1,

1975. As a result, Contractor and Surety contend that as a matter of law the portion of the trial court's $5,843.47 judgment which represented the labor and materials delivered prior to March 1, 1977, i. e., $1,651.19 in value, should be subtracted from the judgment.

Materialman, on the other hand, submits that Contractor and Owner had actual notice of Subcontractor's debt to Materialman as early as February of 1975, and that because Contractor and Surety were not prejudiced this actual notice was sufficient to perfect its claim against the Article 5472d surety bond.

■ Materialman cites *Hunt Developers, Inc. v. Western Steel Company,* 409 S.W.2d 443 (Tex.Civ.App.—Corpus Christi 1966, no writ) as its only authority. We find *Hunt* not controlling in the instant case. *Hunt* did not hold that notice may be waived entirely or that actual notice suffices where written notice is required. *Hunt,* rather, concerned itself with the content of the notice sent; i. e., that a warning is not required as a part of the notice which perfects a materialman's lien under Article 5469. We therein stated that the legislature did not intend that "Materialmen should lose their liens through the technicalities of a warning where the owner was not misled to his prejudice," but this legislative policy of liberal construction does not control in those cases where the legislature has mandated certain requirements for perfecting a surety bond claim in clear unequivocal terms. See *Goldman v. Torres,* 161 Tex. 437, 341 S.W.2d 154 (1960); *Conn, Sherrod & Co. v. Tri-Elec. Supply Co.,* 535 S.W.2d 31 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.).

■ A case dealing with this issue, *American Indem. Co. v. Da-Col Paint Manufacturing Co.,* 508 S.W.2d 944, 949 (Tex.Civ. App.—Dallas) ref'd on other grounds, 517 S.W.2d 270 (Tex.Sup.1974) stated:

"We do not agree that constructive notice or even actual knowledge by the original contractor of the unpaid balance of the claim satisfies the requirement of the statute."

We hold that, timely written notice is a necessary condition precedent to perfecting a claim under Article 5472d § 4b. *Stone Fort Nat. Bank v. Elliott Elec. Supply,* 548 S.W.2d 441 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Anderson v. Clayton,* 494 S.W.2d 650 (Tex.Civ.App.—Dallas 1973, no writ).

■ Materialman asserts, alternatively, that if we find its notice to be insufficient, the trial court's judgment for $5,843.47 in favor of Materialman against Contractor and Surety can be sustained on another theory; i. e., Materialman's unappealed judgment against Subcontractor for $5,843.47 entitled it to not only ownership of all the proceeds of the $4,320.21 judgment Subcontractor recovered against Contractor and Surety but also to application of these same funds to all of Subcontractor's debts to Materialman incurred prior to March 1, 1975, and to those debts accruing after March 1, 1975, to the extent of the remaining money on a first-in first-out basis. The remaining funds Materialman would recover directly from Contractor and Surety, i. e., $1,523.46. This would necessarily cover those materials and supplies furnished after March 1, 1975, where no notice problems are raised.

Necessarily implicit in Materialman's argument is the following contention: that Materialman is legally entitled to all money Contractor and Surety pay to Subcontractor, and therefore Materialman is entitled to have a direct judgment against Contractor and Surety for this amount. Simply stated, Materialman attempts to justify a direct judgment because he might be able to recover that same amount indirectly. We do not agree with this reasoning.

Materialman cites no authority nor has this Court found any authority to support this contention. Moreover, such argument implies that Materialman has acquired a first priority to the funds which Contractor and Surety might pay to Subcontractor, notwithstanding possible claims of competing creditors not a party to this suit.

Accordingly, the trial court's judgment against Contractor and Surety in favor of

Materialman should be reformed and reduced by $1,651.19. Further, Contractor's and Surety's judgment over against Subcontractor should be reduced in like amount.

■ By their third point of error, Contractor and Surety assert that the trial court erred in failing to grant them indemnity against Subcontractor for the $2,000 attorney's fee judgment to be paid to Materialman. We sustain this contention.

■ Contractor and Surety cite *Sigmond Rothschild Co. v. Moore,* 166 S.W.2d 744 (Tex.Civ.App.—Beaumont 1942, writ ref'd w.o.m.) and *Turner v. Turner,* 369 S.W.2d 675 (Tex.Civ.App.—Waco 1963) rev'd in part on other grounds, 385 S.W.2d 230 (Tex.Sup.1964) to support their claim for indemnity. Subcontractor cites us to no authority to support its contention that Contractor and Surety are not entitled to judgment over against Subcontractor for attorneys fees. While *Moore* and *Turner, supra,* do not deal with an implied obligation of indemnity arising out of a contractual relationship, they do present a few general rules of indemnity; namely, that a right to indemnity may be implied by law or arise under a contract. See also 30 Tex. Jur.2d Indemnity § 8 (1962). Also, a party is entitled to be indemnified when exposed to liability for the wrongful act of another. *Turner* at 679.

In *Felker v. Thomas,* 83 S.W.2d 1055 (Tex.Civ.App.—El Paso 1935, no writ) the court dealt with this issue of implied indemnification arising out of a contractual relationship on facts closely analogous to those of the instant case. In *Felker,* the accommodation signer of a note, that is, one who guarantees the payment of a note without consideration from the obligor of the note, was held to have a right to be indemnified by the obligor upon default on the note and subsequent judgment against the accommodation signer for the amount of the note. It follows that, in our case, Contractor and Surety, without consideration, acted as guarantors of the obligations of Subcontractor to his suppliers, much the same as

did the accommodation signer of the note in *Felker.*

Accordingly, we hold that Contractor and Surety are entitled to judgment over against Subcontractor for the amount of the $2,000 attorney's fee judgment, if paid, and the trial court judgment should be reformed to reflect this holding.

In their fourth point of error, Contractor and Surety claim that the trial court erred in granting attorney's fees to both Subcontractor and Materialman because Contractor was entitled to withhold final payment to Subcontractor upon receiving notice from Materialman that its claim for materials supplied to Subcontractor remained unpaid. Contractor and Surety cite Youngblood, Mechanics and Materialman's Liens in Texas, 26 Sw.L.J. 665, 706 (1972) and *American Indem. Co. v. Dal-Col Paint Manufacturing Co., supra,* to support their position. The only condition precedent stated in Article 5472d § 6 to recovery of attorney's fees is a recovery made under the bond. And no exceptions, even for rightful withholding of funds, are listed. Point of error number four is overruled.

Contractor's and Surety's fifth point of error contends that the trial court erred in entering a judgment for attorney's fees in favor of both Subcontractor and Materialman against Contractor and Surety, jointly and severally, because attorney's fees are not recoverable against the principal of a Hardeman Act Bond, citing *University State Bank v. Gifford-Hill Con. Corp.,* 431 S.W.2d 561 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.) which states at 568:

> "The trial court's judgment provides that attorney's fees awarded to Rebar and to G. H. may be enforced by foreclosure of mechanic's liens against the property of the owner and grants the materialmen recovery of attorney's fees against Aetna. The fees are recoverable against Aetna under Sec. 6 of Art. 5472d, Vernon's Ann. Civ.St., but not against the owner and general contractor because their written contracts contain no provisions for attorney's fees. . . . ."

Contractor and Surety offer the above language to support their contention that as a matter of law a claimant on an Article 5472d bond cannot recover attorney's fees from the general contractor unless the claimant has a contract which provides for the payment of attorney's fees with the general contractor. We do not interpret Article 5472d or the above cited case to comport with this proposed interpretation.

The above language in *Gifford-Hill* is unclear as to which written contracts the court was referring. We can only conjecture that these contracts were the owner's and general contractor's contract which is required to be filed with the bond pursuant to Article 5472d § 2 or possibly an indemnity agreement among the owner, general contractor and surety. We find no indication from the language used that the court was referring to a contract between the materialmen and both the general contractor and owner, as Contractor contends.

Assuming, arguendo, that the contract referred to was the owner's and general contractor's written contracts, filed with the bond, the court appears to hold that unless there is a provision in owner's and general contractor's contract providing for attorney's fees for materialmen, none can be recovered from the owner or general contractor.

The liability of the owner for attorney's fees is not before us. We do not find, though, that Article 5472d § 6 was intended to allow recovery of attorney's fees from only the surety. This result would be contrary to the nature of the principal-surety relationship; i. e., a surety is one who agrees to be responsible for the debt of another. 53 Tex.Jur.2d § 1 (1964); *First Nat. Bank v. Alexander,* 4 S.W.2d 298 (Tex. Civ.App.—Amarillo 1928, writ dism'd). Unless a judgment is also taken against the principal, the surety will have no rights to which it can be subrogated in order that it might recover the attorney's fees paid. See Tex.Bus.Comm.Code Ann. § 34.04 (1968).

Moreover, in *Campbell Brothers, Inc. v. General Electric Sup. Co.,* 383 S.W.2d 61

(Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.) the Court recognized the trial court's award of attorney's fees against both the general contractor and the surety pursuant to Article 5472d without mention of a contractual provision. In addition, a careful reading of Article 5472d § 6 discloses no requirement of a contractual agreement for a claimant to recover attorney's fees from both the general contractor and the surety.

Finally, Rule 31, T.R.C.P. (1967) provides: "No surety shall be sued unless his principal is joined with him, or unless judgment has previously been rendered against his principal, except in cases otherwise provided for in the law and these rules." The express language of Article 5472d § 6 uses the terms principal and surety, and we find no legislative intention to limit recovery of Article 5472d § 6 attorney's fees to only the surety and those claimants with a contractual relation to the general contractor. Appellants' fifth point is overruled.

Contractor and Surety assert in their sixth point of error that the trial court erred in entering a judgment in favor of Subcontractor for extra work which Contractor did not approve in writing, as required by Contractor's contract with Subcontractor.

The provision referred to provides: "Any alteration or deviation from above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above the estimate."

Generally, a provision in a construction contract providing that any alterations or deviations must be executed in writing is binding, and there can be no recovery unless the writing requirement is met. *State v. Martin Bros.*, 138 Tex. 505, 160 S.W.2d 58 (1942); *D. H. Overmyer Co. v. Harbison*, 453 S.W.2d 368 (Tex.Civ.App. —El Paso 1970, no writ); *Stave v. F & C Engineering Company*, 438 S.W.2d 647 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). However, such a provision can be waived by the actions and conduct of the parties. *Mood v. Methodist Episcopal Church South, of Cisco*, 296 S.W.

506 (Tex.Comm'n App.1927, holding approved); *Travis-Williamson County Water C. & I. Dist. v. Page*, 358 S.W.2d 158 (Tex. Civ.App.—Austin 1962), rev'd in part on other grounds, 367 S.W.2d 307 (Tex.Sup. 1963); *Housing Authority of City of Dallas v. Hubbell*, 325 S.W.2d 880 (Tex.Civ.App.— Dallas 1959, writ ref'd n.r.e.).

As we have heretofore noted, where no findings of fact or conclusions of law were brought forward we can sustain the trial court's judgment on any theory which is raised by the pleadings and supported by the evidence. We hold, therefore, that the trial court was justified in granting the extras to Subcontractor under the theory that Contractor waived its right to enforce the contract's writing requirement and that, consequently, Subcontractor was entitled to recover his extras under the theory of quantum meruit as we will demonstrate.

Though we have been unable to find any pleadings by Subcontractor using the specific term "waiver," we find that the general allegations seeking pay for extra work, without objections, were sufficient to give notice of waiver. *Travis-Williamson County Water C. & I. Dist. v. Page, supra.*

The general rule as to implied waiver is aptly stated in *Lewis v. Smith*, 198 S.W.2d 598, 601 (Tex.Civ.App.—Fort Worth 1946, writ dism'd): ". . . In the absence of an express renunciation of a known right, a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled to his prejudice into an honest belief that such waiver was intended or assented to. . . ." See also, *City of Wichita Falls v. Bruner*, 191 S.W.2d 912 (Tex.Civ.App.—Forth Worth 1945, no writ).

We find there is evidence to support the trial court's implied conclusion that Subcontractor was led into an honest belief that the writing requirement had been waived

with respect to the connection of the two additional "Malsbury" units. Not only did Contractor itself, in conjunction with Owner, manifest its assent to the extra work by ordering, delivering and putting into position the extra "Malsbury" units and providing written instruction booklets for installation, but also Mr. Cannul, the construction superintendent, specifically requested Subcontractor to install them while promising him that he would be paid extra for the installation. These facts show that a reasonable man would believe he would be paid notwithstanding a writing requirement. See 2 A.L.R.3d 620, 661–66 (1965). Accordingly, we find the trial court properly held that Subcontractor recover for extra work.

■■■ By crosspoints, Subcontractor and Materialman contend that the trial court abused its discretion in denying both Subcontractor's and Materialman's motions to reopen testimony so as to present evidence supporting their claim for attorney's fees on appeal and that the Court of Civil Appeals should order the granting of reasonable attorney's fees upon appeal. We find no abuse of discretion.

■■■ As to their second contention, a Court of Civil Appeals may not initiate an award for attorney's fees, since this would be the exercise of original rather than appellate jurisdiction. *International Security Life Insurance Co. v. Spray,* 468 S.W.2d 347 (Tex.Sup.1971). As to their first contention, the award of attorney's fees is a fact issue which must be passed upon by the trial court. *International Security Life Insurance Co. v. Spray, supra.* Moreover, a trial court's awarding attorney's fees under Article 5472d is discretionary and not mandatory. See also *Olivares v. Porter Poultry & Egg Company,* 523 S.W.2d 726 (Tex.Civ. App.—San Antonio 1975, no writ), *Bernard v. Bernard,* 491 S.W.2d 222 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ). As a result, the trial court's refusal in our case to reopen the evidence as to reasonable attorney's fees on appeal was tantamount to his refusal to allow attorney's fees for the appeal. *Schwartz v. Jacob,* 394 S.W.2d 15 (Tex.Civ.App.—Houston [1st Dist.] 1965, writ ref'd n.r.e.)

There is conferred upon us the power to modify the trial court's judgment and to render such judgment against the appellants as should have been rendered by the court below. Rule 435, T.R.C.P. Therefore the trial court's judgment is reformed to provide that judgment against Contractor and Surety in favor of Materialman be reduced by $1,651.19, representing the amount not subject to timely notice by Materialman; that Contractor's and Surety's judgment over against Subcontractor be reduced by the same amount; and that Contractor's and Surety's judgment over against Subcontractor be increased by $2,000.00, representing Materialman's attorney's fees.

As reformed, the judgment of the trial court is affirmed.

NYE, C. J., not participating.