1999 SD 118

**Marvin D. TRUHE, Plaintiff and Appellee,**

v.

**The TURNAC GROUP, L.L.C., a South Dakota Limited Liability Company, Defendant and Appellant.**

**No. 20631.**

Supreme Court of South Dakota.

Considered on Briefs April 27, 1999.

Decided Sept. 1, 1999.

Edward C. Carpenter and Heather M. Lammers of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

John K. Nooney and Penny Tibke Platnick of Morrill Thomas Nooney & Braun, LLP, Rapid City, South Dakota, Attorneys for defendant and appellant.

LOVRIEN, Circuit Judge.

[¶ 1.] This case concerns a dispute between Marvin Truhe (Tenant) and Turnac Group (Landlord), regarding a written contract allowing Tenant to lease space in a building owned by Landlord. The parties later orally agreed to cancel the lease despite a provision in the lease which required all modifications to the lease be in writing. The trial court found that despite this clause, the oral agreement effectively operated to cancel the lease. Landlord appeals and we affirm.

## FACTS

[¶ 2.] In 1988, Tenant began leasing office space in the First National Bank Building, in Rapid City, South Dakota. Tenant is an attorney in Rapid City and his rented office space occupied approximately 2,300 square feet, known as Suite 508. Landlord purchased the building in the fall of 1995. After the purchase, the parties began negotiating a different lease than the one Tenant had been operating under with the previous owners.

[¶ 3.] The lease negotiations occurred between Tenant and Dr. John Sabow, Landlord's principal owner, acting as agent for the company. On January 10, 1996, a new lease was signed and it is this lease which is the subject of this litigation. The lease contained the following provisions:

> 28. *Miscellaneous.*
>
> (b) All of the agreements of landlord and tenant, whether written or oral, with respect to the premises are contained in this lease, and no modification of this lease or any of its conditions or provisions shall be binding upon landlord or tenant unless in writing signed by the party sought to be charged.

[¶ 4.] In February 1997, four attorneys joined Tenant in his legal practice, creating the need for more space in the law office. Tenant contacted Sabow regarding the possibility of leasing additional office space in the building to accommodate the new attorneys. Simultaneously, Tenant began looking at office space outside the building and was in fact negotiating the lease of space in an adjacent building owned by Black Hills Corporation.

[¶ 5.] On March 6, 1997, Sabow and Tenant met to discuss the situation. Sabow indicated that Landlord would be willing to lease additional space to Tenant, but at a rent forty percent higher than the current price Tenant was paying. Tenant replied that this amount was too high, so his group would be leaving the building and he would try to find someone to sublet their current space.[1] Sabow responded that he would prefer to release Tenant from the remainder of his lease if a replacement tenant could be found at the higher rent amount, rather than let Tenant sublet under the current lease at the lower price.[2] The trial court found this exchange to be an oral agreement to surrender and cancel the lease. For purposes of this appeal, neither party now disputes this finding.[3]

[¶ 6.] Following this oral agreement to terminate the lease between Tenant and Landlord, Tenant entered into a lease with Black Hills Corporation for space in its building. Tenant also attempted to get Sabow to commit to the oral cancellation agreement in writing but Sabow refused to honor the oral agreement, claiming it never occurred.

[¶ 7.] In light of Landlord's refusal to honor the cancellation agreement and given the fact that Tenant had already en-

---

1. The lease provided the following:
   13. *Assignment and Subletting.*
   (a) Tenant may, with landlord's consent, which may be withheld if Landlord deems it appropriate, assign this Lease or sublet all or any portion of the Premises.
   . . .
   (c) No assignment or sublease shall release Tenant from its obligations hereunder, including obligations thereafter accruing.

2. Apparently, Landlord thought it was to its advantage to find a new tenant who would pay a higher rent to Landlord than to have Tenant sublease the space and possibly profit by finding a sublettor who would pay Tenant more than Tenant was paying Landlord.

3. We note the admission on page one of appellant's reply brief:

   > For purposes of this Appeal, Appellant, [Landlord], does not take issue with the Trial Court's factual finding that an oral agreement was made. The issue on appeal is whether, given the terms of the written contract, the alleged oral agreement could legally cancel the contract.

   We also note that admission in a party's brief is binding on that party as a judicial admission. *Matter of Estate of Tallman*, 1997 SD 49, ¶ 13, 562 N.W.2d 893, 896; *Tuttle v. Tuttle*, 399 N.W.2d 876, 878 (S.D.1987); *see also Postscript Enterprises v. City of Bridgeton*, 905 F.2d 223, 227–28 (8thCir.1990).

tered into another lease, Tenant decided to try and sublet the space to someone under the current lease and hired a Realtor to find a sublettor. These efforts were not successful.[4] Tenant vacated the space on May 2, 1997, and moved his office to the new location in the Black Hills Corporation building.

[¶ 8.] Tenant continued to pay rent to Landlord for May and June 1997. In July 1997, Tenant stopped paying rent and brought suit in circuit court against Landlord to determine the obligations of the parties under the contract. Landlord counterclaimed for nonpayment of rents for the period remaining under the lease.

[¶ 9.] The matter was tried to the circuit court on April 14, 1998. The trial court ordered the lease to be of no further force or effect and entered judgment in favor of Tenant plus damages of $6,917.47.[5] The trial court also dismissed Landlord's counterclaim with prejudice.[6]

[¶ 10.] On appeal, Landlord has raised a number of issues, only one of which we need address:

Could the lease be effectively canceled by an oral agreement when the terms of the lease expressly provided that any amendments, waivers, or modifications

must be in writing signed by the party sought to be charged?

## STANDARD OF REVIEW

■ [¶ 11.] This matter presents no issue of material fact. Instead, we must decide the legal effect of an oral rescission on a written contract, which is a question of law. *Olson v. U.S. Fidelity and Guar. Co.*, 1996 SD 66, ¶ 6, 549 N.W.2d 199, 200; *Colonial Ins. Co. of Cal. v. Lundquist*, 539 N.W.2d 871, 873 (S.D.1995). As a question of law, it is fully reviewable on appeal. *Lane v. Travelers Indemnity Co.*, 1997 SD 58, ¶ 12, 563 N.W.2d 423, 425; *De Smet Ins. Co. v. Gibson*, 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99.

■ [¶ 12.] Under such de novo review, no deference is given to the trial court's conclusions of law. *Poppen v. Walker*, 520 N.W.2d 238, 241 (S.D.1994); *Brown v. Egan Consol. School D. 50-2*, 449 N.W.2d 259, 260 (S.D.1989). "On appeal, this court can read a contract itself without a presumption in favor of the trial court's determination." *Production Credit Ass'n v. Wynne*, 474 N.W.2d 735, 740 (S.D.1991)(quoting *Baker v. Wilburn*, 456 N.W.2d 304, 306 (S.D.1990) (citations omitted)).

---

4. Through exchanges between the parties made during this period, Sabow indicted he would be agreeable to subletting Tenant's space. In late May and early June 1997, Tenant's Realtor began negotiations with American Express Financial Advisors, Inc. as a potential sublettor for Tenant's space, Suite 508, in Landlord's building. American Express eventually made an offer to sublet the north half of Suite 508, or approximately 1,150 square feet. Tenant requested Landlord's approval of the sublease as was required under the above-quoted section thirteen of Tenant's lease.

Instead of directly replying to Tenant regarding his request, Sabow directed his building manager to inform American Express that the sublease was unacceptable and would not be approved. In the same conversation, Landlord offered to lease American Express other space in the building which would better fit their acknowledged smaller office space needs.

Soon thereafter, Landlord and American Express entered into a lease for approximately

730 square feet of office space on the sixth floor of the building. It appears from the record that Sabow failed to notify Tenant that the sublease was denied or that other space had been leased to American Express. Tenant did not learn of these events until several days after American Express signed the lease with Landlord.

5. Damages included reimbursement for May and June rent and a security deposit less unexpended improvements to the premises prorated to the date of departure.

6. In the alternative, the trial court found that Landlord was estopped from enforcing the lease due to Sabow's statements, representations, and actions upon which Tenant relied to his detriment. Also in the alternative, the trial court found that Landlord, through Sabow, had violated the implied covenant of good faith and fair dealing, thus providing a basis for rescission of the contract under SDCL 21-12-1(1).

## DECISION

██ [¶ 13.] Can a lease be canceled by oral agreement of the parties despite a clause in the contract which requires modifications to the contract be in writing? South Dakota has come close to deciding this issue, but has not quite done so. In *Hirsch v. Legeros*, 58 S.D. 426, 235 N.W. 361, 362 (1931), we stated, "[t]here may be a cancellation or rescission of a written lease or a surrender of the premises by an oral or implied agreement." In 1983, we permitted oral rescission of a real estate contract when such agreement can be "evidenced by failure of both parties to take action towards enforcement or performance of the contract." *Preheim v. Ortman*, 331 N.W.2d 62, 64 (S.D.1983).

[¶ 14.] More recently, we again permitted extensive oral modification of a written contract in *Moe v. John Deere*, 516 N.W.2d 332, 336 (S.D.1994). In *Moe* we referred SDCL 53–8–7, which states: "A contract in writing may be altered by a contract in writing without a new consideration or by an executed oral agreement, and not otherwise."

[¶ 15.] In addition, the grounds for legal rescission are found in SDCL 53–11–2, which states:

A party to a contract may rescind the same in the following cases only:

(1) If consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party;

(2) If through fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;

(3) If the consideration becomes entirely void from any cause;

(4) If such consideration before it is rendered to him fails in a material respect from any cause; or

(5) By consent of all the other parties.

[¶ 16.] Current statutory law allows termination of a lease by oral agreement, as seen in SDCL 43–32–22:

A lease is terminated:

(1) By the expiration of the agreed term;

(2) By the mutual consent of the parties;

(3) By the tenant acquiring a title to the leased premises superior to that of the landlord.

[¶ 17.] What has not been decided in South Dakota is the issue presented here, whether such an oral surrender agreement is still sufficient when the written lease has a provision stating that all modifications must be in writing. Thus, this is truly a case of first impression in this state.

[¶ 18.] Other states and legal commentators have tackled this issue, and most have decided to allow oral cancellation of written contracts despite contract provisions requiring a writing. Wisconsin has decided as such in a case with a very similar fact scenario. *ABC Outdoor Advertising, Inc. v. Dolhun's Marine, Inc.*, 38 Wis.2d 457, 157 N.W.2d 680 (1968). The parties had entered into a three year written contract to lease a billboard for advertising. About a year into the lease, representatives of each side orally agreed to terminate the lease because the lessee was going out of the business it was advertising. After reaching the agreement, the lessee issued a check for final payment on the contract, but the lessor did not cash the check. Instead, the lessor continued to bill the lessee for monthly rental under the contract.

[¶ 19.] The contract in *ABC Outdoor* contained a written requirement clause, but it was even more strict than the one in the Tenant/Landlord contract here (which merely prevented oral modification, waiver, or amendment, and does not mention cancellation or rescission.) The *ABC Outdoor* contract read:

This contract can be **canceled** only by mutual consent, in writing, of the parties

hereto, and shall be binding on the heirs, assigns or successors in business of the parties hereto. (emphasis added).

After reviewing several authorities in the area, the Wisconsin Supreme Court concluded that this clause did not stop the parties from entering into a valid oral cancellation agreement. *Id.* at 685.

[¶ 20.] Other courts have also held that oral agreements to rescind a contract are viable despite contract clauses which require agreements be in writing. *Larson v. Hill's Heating & Refrig. of Bemidji*, 400 N.W.2d 777, 781 (Minn.App.1987); *Kelly Springfield Tire Co. v. Faulkner*, 191 Wash. 549, 71 P.2d 382, 384 (1937).[7]

[¶ 21.] The U.S. Eighth Circuit Court of Appeals has also subscribed to the general notion that "a provision purporting to prohibit modification of a contract except by a specified method does not prevent the parties to the contract from modifying it by some other method." *Goshey v. ITT Life Ins. Corp.*, 590 F.2d 737, 740 (8thCir.1979).

[¶ 22.] *Corbin on Contracts* addresses this issue directly, and states:

Any written contract, ... can be rescinded or varied at will by the oral agreement of the parties; and this is held to be true, except as otherwise provided by statute, even of a written agreement that the contract shall not be orally varied or rescinded. Two contractors cannot by mutual agreement limit their power to control their legal relations by future mutual agreement. Nor can they in this manner prescribe new rules of evidence and procedure in the proof of facts and events.

6, A. Corbin, *Corbin on Contracts*, § 1295, at 206–208 (1962).

Parties to a contract can not, even by an express provision in the contract, deprive themselves of the power to alter or vary or discharge it by subsequent agreement. An express provision in a written contract that no rescission or variation shall be valid unless it too is in writing is ineffective to invalidate a subsequent oral agreement to the contrary. In like manner, a provision that an express condition of a promise or promises in the contract can not be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective. The promisor still has the power to waive the condition, or by his conduct to estop himself from insisting upon it, to the same extent that he would have had this

7. While not specifically addressing rescission, most courts which have examined these "no oral modification" clauses have found them insufficient to prevent oral modifications, and in a couple cases effective cancellation has resulted: *J.T. Majors & Son, Inc. v. Lippert Bros. Inc.*, 263 F.2d 650 (10th Cir.1958) (contract requirement that extra work order must be in writing validly waived by oral agreement); *Wiener v. Compagnie Generale Transatlantique*, 61 F.2d 893 (2nd Cir.1932); *Teer v. George A. Fuller Co.*, 30 F.2d 30 (4th Cir. 1929); *Long v. Shepherd*, 159 Ala. 595, 48 So. 675 (1909)(court allowed change and substitute new contract in parol despite original contract clause requiring writing); Sitkin v. Smith, 35 Ariz. 226, 276 P. 521 (1929)(allowed oral modification of divorce agreement); *Hotle v. Miller*, 51 Cal.2d 541, 334 P.2d 849 (1959); *Blakeslee v. Board of Water Com'rs*, 121 Conn. 163, 183 A. 887 (1909); *Barile Excavating Etc. v. Vacuum Under Drain Inc.*, 362 So.2d 117 (Fla.App.1978); *Nichols Shepard Co. v. Maxon*, 76 Kan. 607, 92 P. 545, 546 (1907)(party "cannot divest itself of the power to waive a condition made for its benefit"); *Glass v. Bryant*, 302 Ky. 236, 194 S.W.2d 390 (1946)(allowed oral modification despite clause except when "the parol agreement itself was within Statute of Frauds"); *New York Life Ins. Co., v. O'Dom*, 100 Miss. 219, 56 So. 379 (1911)(insurance contract with "no oral modification" clause was canceled by parol agreement); *Pelican Elec. Contractors v. Neumeyer*, 419 So.2d 1 (La.App. 1982), writ denied 423 So.2d 1150 (La.1982); *Freeman v. Stanbern Const. Co.*, 205 Md. 71, 106 A.2d 50 (1954); *Prime Financial Group, Inc. v. Masters*, 141 N.H. 33, 676 A.2d 528 (N.H.1996); *Headley v. Cavileer*, 82 N.J.L. 635, 82 A. 908 (1912); *Wagner v. Graziano Constr. Co.*, 390 Pa. 445, 136 A.2d 82 (1957); *Ostroff v. Stephen Girard, Inc.*, 79 R.I. 158, 85 A.2d 174 (1951) (contract requirement that extra work order must be in writing validly waived by oral agreement); *McCue v. Collins*, 208 S.W.2d 652, 654–55 (Tex.Civ.App. 1948); *Simpson v. Mann*, 71 W.Va. 516, 76 S.E. 895 (1912).

power if there had been no such provision.

3A, A. Corbin, *Corbin on Contracts* § 763, at 531 (1960).

[¶ 23.] *Williston on Contracts* agrees:

Nor does it make any difference that the original written contract provided that it should not subsequently be varied except by writing. This stipulation itself may be rescinded by parol and any oral variation of the writing which may be agreed upon and which is supported by sufficient consideration is by necessary implication a rescission to that extent.

15, W. Jaeger, *Williston on Contracts,* § 1828, at 496 (3rd ed 1967). In summary, the weight of authority would allow an oral agreement to terminate a written contract despite a provision in the contract requiring contract modifications to be in writing.

[¶ 24.] The only dissent from this rule seems to be California, New York, and Texas where the applicable statutes have been redrafted in such a specific way as to result in narrow case holdings supporting 'no oral modification' clauses.[8]

[¶ 25.] While Landlord relies on cases from these three jurisdictions, given our statutes, we do not find these cases persuasive.[9]

[¶ 26.] In light of the authority cited herein, we hold that an oral mutual agreement to cancel or rescind a contract operates to do so despite a clause in the contract which requires modifications to the contract be in writing. Accordingly, we affirm both the trial court's finding that the lease between Tenant and Landlord was effectively canceled by their oral agreement as well as the trial court's money award to Tenant for rent paid to Landlord after the lease was terminated. Given our decision on this issue, we need not address the other issues raised on appeal.

[¶ 27.] Affirmed.

[¶ 28.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

[¶ 29.] LOVRIEN, Circuit Judge, for KONENKAMP, Justice, disqualified.

**8.** California: *Kayne v. First Charter Bank,* 16 Cal.Rptr.2d 450 (Cal.App.1993)(refused to enforce oral modification of guarantee agreement containing no-oral-modification clause where modification was executed only by guarantor and not by lender). New York: *Towers Charter & Marine v. Cadillac Ins. Co.,* 894 F.2d 516, 522 (2nd Cir.1990); *Chemical Bank v. Wasserman,* 37 N.Y.2d 249, 371 N.Y.S.2d 919, 333 N.E.2d 187, 188 (1975); *Dress Shirt Sales, Inc. v. Hotel Martinique Associates,* 12 N.Y.2d 339, 239 N.Y.S.2d 660, 190 N.E.2d 10 (1963). Texas: *Givens v. Dougherty,* 671 S.W.2d 877 (Tex 1984)(listing agreement for sale of real estate could not be orally rescinded, court chose to ignore the position supported by "virtually all of the commentators" in exchange for "well-established" Texas rule); *Matter of Timely Secretarial Service, Inc.,* 987 F.2d 1167, 1173 (5th Cir.1993)(under Texas law, oral waiver was not allowed).

**9.** Landlord relies on two New York cases to support its position: *Towers,* 894 F.2d 516 (applying New York law) and *Elmsford Sheet Metal Workers v. Shasta,* 103 A.D.2d 764, 477 N.Y.S.2d 391 (N.Y.App.Div.1984). Both cases involved attempted oral modification, not cancellation, of certain contract requirements (delivery dates and document supply) in contracts which had "no oral modification" clauses. Both courts held that these oral modifications cannot be enforced against the contract clauses. However, the *Towers* court went further and said there were two exceptions: "when there has been partial performance of the agreement to modify," and "when one party has induced the other party to rely on an oral modification, the first party may be equitably estopped." 894 F.2d at 522.

The other two cases cited by Landlord also deal with oral modification of contracts, not oral rescissions. *Texas Const. Associates, Inc. v. Balli,* 558 S.W.2d 513 (Tex.Civ.App. 1977); *Prigge v. Olson,* 154 Neb. 131, 47 N.W.2d 344 (1951). However, these cases were not a strict holding in support of "no oral modification" clauses. The *Balli* court said the clause in the contract should be enforced, but it can be waived by the actions and conduct of the parties. 558 S.W.2d at 521.