**D. H. OVERMYER CO., Inc., a/k/a D. H. Overmyer Warehouse Company, et al., Appellants,**

**v.**

**George HARBISON, d/b/a Harbison & Larriva, Appellee.**

**No. 6070.**

Court of Civil Appeals of Texas, El Paso.

April 1, 1970.

Scott, Hulse, Marshall & Feuille, El Paso, J. Sam Moore, Jr., G. Gregory Eagleburger, El Paso, of counsel, for appellants.

Peticolas, Luscombe & Stephens, John B. Luscombe, Jr., El Paso, for appellee.

## OPINION

WARD, Justice.

Appellee, a sub-contractor, brought this suit to recover, primarily, upon a release bond executed pursuant to Article 5472c., Vernon's Texas Civil Statutes, by D. H. Overmyer Warehouse Company (now D. H. Overmyer Company, Inc.), as principal, and Liberty Mutual Insurance Company, as surety, for the release of the appellee's mechanic's and materialman's lien against certain real estate in El Paso upon which had been erected two warehouses. Upon trial to the court without a jury, judgment was entered in favor of the appellee against these two appellants for the sum of $5,-965.80, together with attorney's fee in the amount of $2,250.00. We affirm the judgment of the trial court.

Appellee entered into five written contracts with Nixon Construction Company (a wholly-owned subsidiary of Green and White Construction Company) as the general contractor, to do certain work on premises owned by Overmyer, the contracts being approved by the owner. The one contract in question before us is dated November 23, 1965 and is for labor in excavation and laying a concrete slab in one of the warehouses. The contract is for $11,000.00 and the work was accepted by the owner on June 11, 1966. On this contract there is due and owing to the appellee the sum of $2,684.00. On the other four contracts, the correct performances of

which are not questioned, there are due additional sums, to make the total of $5,965.-80 owing the appellee if he should prevail. Appellee filed his mechanic's and materialman's lien in September, 1966 on the property in question, in accordance with Article 5453; and thereafter, on May 29, 1967, Overmyer, as principal, and the insurance company as surety, executed their bond to release the property pursuant to Article 5472, in the amount of $11,950.00 in favor of the appellee, conditioned that these appellants would pay the appellee the amount of his lien and all costs in the event the same was proved to be a lien on the property. The trial court allowed a judgment such as was approved by this court in Nixon Construction Company and D. H. Overmyer Co., Inc. v. Rosales, 437 S.W.2d 52 (1969, wr.ref. n. r. e.). No findings of fact and conclusions of law were filed by the trial court and none were requested, but the court in its judgment, did find that the work performed by appellee was performed and completed in a good and workmanlike manner; that the appellee's lien was fixed and established in accordance with law; that the release bond in favor of the appellee was executed in compliance with Article 5472c.; that appellee timely filed suit upon the bond; that appellee's lien in the amount of $5,965.80 had been proved and that a reasonable attorney's fee amounted to $2,250.00.

The appellants' points consist of "no evidence" and "insufficient evidence" points relating to the fact that the appellee never obtained the owner's consent to any changes in the plans and specifications which occurred during the construction. The written contracts contain the following provision:

"Any changes, alterations or deviations from the final plans and specifications must be approved in writing by the owner, general contractor, and engineer before that part of the work is started."

According to the appellee, as developed by his own attorney, during the laying of the concrete floor, only half of the control joints or construction joints were placed, rather than as were called for in the original plans and specifications in the flooring. Apparently the plans were changed during construction, and at no time were these changes ever approved in writing by the owner. However, there is no testimony before us as to the number of control joints called for by the original plans, nor any testimony as to the number actually placed in the floor. It is the appellants' reasoning that recovery under the statutory release bond is allowed only upon the establishment of a valid lien by the sub-contractor, which lien is valid only if there was a substantial compliance with the subcontract terms, and there can be no substantial compliance with the subcontract terms as the concrete work was not in accordance with the plans and specifications, which were changed without the owner's written consent.

■ It is the general rule that a stipulation, in a private building or construction contract, that changes, alterations or deviations must be ordered in writing, is valid and binding upon the parties and, therefore, so long as such a provision remains in effect, no recovery can be had for the alterations done without a written order in compliance therewith. As stated in Magee v. I. & G. N. Wood & Coal Co., 269 S.W. 2d 498, 505 (Tex.Civ.App., San Antonio 1954, wr.ref. n. r. e.):

"A man contracting for a modest cottage can not be made to pay for a mansion, because a judicial tribunal thinks it suitable for him, nor should a man be required to accept inferior and different materials and workmanship when he has contracted otherwise."

See Uhlhorn v. Reid, 398 S.W.2d 169 (Tex.Civ.App., San Antonio 1965, wr.ref., n. r. e.); Chambless v. J. J. Fritch, General Contractor, Inc., 336 S.W.2d 200 (Tex. Civ.App., Dallas 1960, wr.ref., n. r. e.), and the extensive annotation, 2 A.L.R.3rd 620, 631.

■ Three reasons are apparent why the general rule does not apply to our present case. In the first place, we are unable to see where the deviation or alteration was within the meaning of the contract under consideration. This contract was only that this sub-contractor would furnish all the labor, equipment and supervision necessary to complete the cement flooring; and except for furnishing tie wire, all material in the construction was to be furnished by the general contractor. The plans and specifications are not a part of the record, and we have no description before us as to the type of control or construction joints in this floor. If this were some device such as the rod or dowel type, then under this contract the general contractor would have been obligated to furnish them. If the general contractor changed the plans and specifications to eliminate half of the control joints or construction joints, this did not obligate the sub-contractor to furnish them. This would then relate to matters outside the scope of the sub-contract and involves a dispute only between the owner and the general contractor, who is also now owned by the owner-appellant.

■ In the second place, there has been an effective expressed waiver as was defined in Nixon Construction Co. and D. H. Overmyer Warehouse Co. v. Downs, 441 S.W.2d 284 (Tex.Civ.App., Houston 1969, n. w. h.):

"'A waiver takes place where one dispenses with the performance of something which he has a right to exact, and occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it. 92 C.J.S. [Waiver] p. 1061. Waiver, of course, is a matter of question of intention.' Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855 at 865 (1958)."

The contract provides that "Subcontractor and General Contractor agree that Owner's Engineer's determination as to whether the work performed hereunder is acceptable shall be final." The testimony is undisputed that the work was accepted by the owner on June 11, 1966. In the first part of 1967, the appellant-owner informed the appellee by letter that it had purchased the capital stock of the general contractor and that the general contractor, with the owner's assistance, would, "in a reasonable period of time, be able to fully satisfy its obligations to you and it is our intention to see that this is accomplished as quickly as possible." In the spring of 1967, and shortly before the release bond was filed, the owner's general manager, after checking the appellee's books, agreed with the appellee that the sum of $5,965.80 was due and owing to the appellee, the same sum sued for and recovered by the appellee. Ten days before the trial in 1969, only a general denial had been filed to the appellee's petition. At that time, at a hearing on appellants' motion for continuance, the first notice was given to the appellee that the owner was complaining about the quality of the appellee's work. At the time of trial in May 1969, the appellants pleaded for the first time that appellee did not complete the contract nor perform his work in a good and workmanlike manner. The first time that the appellants have ever raised, in writing, a complaint as to the failure to secure the owner's written consent to any changes, alterations or deviations to the plan, has been in the appellants' brief. Under these facts, the appellants have waived any right to complain of the changes.

■ Finally, there is nothing in the record before us that the owner has been harmed by any alterations or change. The record of the proceedings consists only of stipulations by the parties, the testimony of the appellee, of the City Building Inspector, and the general manager for the owner. The testimony of the appellee is to the effect that the work was done in a good

and workmanlike manner; that there are hair-line cracks in the floor which are non-structural in nature. This was substantiated by the City Building Inspector. The testimony for the appellants is only to the effect that tenants have complained of the floor, that there are cracks in the floor which are "more than one or two", and there is some unevenness in the floor. The record is barren as to any reasonable cost of remedying the defects, if that is the proper measure of damages. If the alleged defects cannot be remedied without injury to the structural efficiency of the building, there is no testimony as to the value of the building as constructed, as compared to the value of the building if it had been constructed according to the plans. There is no testimony in the record as to any recoverable item. See 10 Tex.Jur.2d 65.

Having considered only the evidence and the inference favorable to the judgment, the "no evidence" points are overruled; and having considered and weighed all of the evidence in the case, the "insufficient evidence" points are overruled.

The judgment of the trial court is affirmed.

FRASER, C. J., not participating.