

# NUMBER 13-23-00153-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **DIMENSION BUILDERS, INC.,** | **Appellant,** |

**v.**

| | |
|---|---|
| **JERRY J. STOLARSKY JR., ET AL.,** | **Appellees.** |

## ON APPEAL FROM THE 130TH DISTRICT COURT
## OF MATAGORDA COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron**
**Memorandum Opinion by Justice Cron**

In this home construction dispute, Dimension Builders, Inc. appeals from a take nothing judgment on its claims for breach of contract and quantum meruit against homeowners Jerry and Leslie Stolarsky. In what we construe as four issues, Dimension contends that: (1–2) both claims are legally viable under the undisputed facts of the case; (3) the trial court's no-damages finding is not supported by factually sufficient evidence;

and (4) the trial court erred by refusing to enter additional findings of fact and conclusions of law. We affirm in part and reverse and remand in part.

## I.   BACKGROUND

The Stolarskys hired Dimension, a custom home builder, to construct their new home in Matagorda County. The construction contract, executed by the parties on December 6, 2016 (the Contract), obligated Dimension to "furnish all labor, services, equipment, materials, and all other facilities (the 'Work') for the construction of certain improvements, generally described as a private residence, Plan 3887 (the 'Improvements')" on the Stolarskys' property. The parties further agreed that "[t]he Improvements will be constructed substantially in accordance with the architectural drawings, specifications, and listing of materials and equipment (the 'Plans and Specifications') which have been initialed by the parties." It is undisputed that the Stolarskys agreed to pay Dimension $435,342 for the work defined under the Contract specifications and that Dimension received that amount from the Stolarskys' lender at closing.[1]

The parties also included a "Change Order" provision in the Contract which required the parties to execute a Change Order for any "changes or alteration[s] to the Work" that were requested by the Stolarskys and approved by Dimension, and this provision also stated that any such Change Order would serve as an amendment to the Contract. Jerry had a prior business relationship with Dimension performing "dirt work"

---

[1] The Contract price was originally $378,665, but the parties agreed at trial that they orally modified the Contract price by increasing it to $435,342. The Stolarskys further acknowledged this fact in their brief: "The cost of all the work performed under the [C]ontract was $435,342."

2

for the company as an independent contractor. This included clearing lots and preparing pads for construction. It is undisputed that during the construction of the Stolarskys' new home, the parties entered a bartering agreement: the Stolarskys verbally requested various upgrades beyond the Contract specifications, and in exchange for Dimension providing these services and materials, Jerry agreed to perform dirt work on other Dimension projects to offset the costs of the upgrades. It is also undisputed that the parties never executed a Change Order for any of these upgrades.

The Stolarskys moved into the home around March 2018. The underlying dispute arose after Dimension sent the Stolarskys an itemized Change Order in September 2020 stating that the Stolarskys owed a balance of $28,844.74 for the upgrades. According to Dimension, this figure represented the total cost of the upgrades, minus credits the Stolarskys received for bartered work and unused materials. The Stolarskys did not sign the Change Order and refused to pay the $28,844.74.

Dimension filed suit, and its live pleading included claims for breach of contract, quantum meruit, promissory estoppel, violation of the Prompt Pay Act, and a request for attorney's fees. The Stolarskys entered a general denial and countersued for breach of contract, alleging that Dimension "failed to fully complete all of the work contemplated under the contract" and "failed to complete the work in a good and workmanlike manner."

The case was tried to the bench, and the parties stipulated to the admission of fifty-two exhibits, including the documents referenced above, invoices Dimension received from vendors and subcontractors, email exchanges between the parties, and pictures of the home. Dimension's president, Jeffery Dziuk, testified on the company's behalf. He

explained that Dimension was suing to recover the balance owed on "changes that were above and beyond" the specifications the parties agreed to under the Contract. He conceded that the Stolarskys did not sign any Change Orders for these upgrades. He said he was initially unconcerned by the lack of formality between the parties because, throughout most of the construction, the bartered work Jerry was performing approximated the cost of the upgrades. That changed, Dziuk said, in "the last three months before [Dimension] finished the home, [because] there w[ere] a lot of changes that occurred very quickly. And it spun to a very big number, [the] 28,000 number." According to Dziuk, Jerry reassured him that the couple would "get another loan to pay for" the upgrades if necessary.

Dziuk further testified that the $28,844.74 figure "has no markup" and only represents "the actual cost that Dimension . . . paid for these items that the Stolarskys had requested." Dziuk testified as to each line item in the unsigned Change Order. For example, Dziuk said that after Dimension had poured the slab and began framing, Jerry "decided he wanted a much bigger rear porch. So we—we had the foundation re-engineered[,] and then we poured an add-on to the rear porch . . . [that added] 662 square feet" beyond the specifications. The out-of-pocket cost Dimension incurred for this upgrade was $24,485. By its calculations, Dimension provided the Stolarskys with $75,155.74 worth of total upgrades. Among the exhibits admitted into evidence were invoices from vendors and subcontractors that corresponded with the itemized costs in the unsigned Change Order.

As for the bartered credits listed in the unsigned Change Order, Dziuk testified that

Jerry would negotiate a price before performing the work, and that amount would then be credited against the balance owed for the upgrades. In particular, the Stolarskys received credits of $19,000, $10,450, $7,475, $1,975, $1,000, $875, and $650 for work Jerry performed for Dimension.

Finally, Dziuk explained that the other itemized credits listed on the unsigned Change Order were deductions for unused materials. For example, the Contract specifications called for slate to be used on the outside kitchen at a cost of $730, and the Stolarskys requested an upgrade to granite, a more expensive material. For that upgrade, the Stolarskys were charged $3,370 for the granite and given a credit of $730 for the unused slate. Dziuk also said that he was updating the Change Order as the Stolarskys requested additional upgrades, the prices for the upgrades were agreed to by the parties, and the unsigned Change Order represents the final tally of upgrades and credits.

Dziuk said that the Stolarskys moved into the home in February or March of 2018 but refused to pay the balance until Dimension completed an ever-evolving punch list. Jerry allegedly told him, "I'm not paying you until everything is done on that house," but every time Dimension completed the items on the list and demanded payment, Leslie would provide a new list of things to complete or items to repair that were under warranty. Eventually, after this "loop" persisted for a couple of years, Dziuk decided to file suit. An "Affidavit of Completion" was signed by the Stolarskys on July 24, 2019, and filed in the property records of Matagorda County. It states that construction was completed on March 1, 2018.

Under cross examination, Dziuk conceded that Dimension was not contractually

obligated to perform any requested upgrades that were not accompanied by a Change Order signed by the Stolarskys. He also agreed that, through Dimension's suit, the company was attempting "to modify" the Contract by seeking reimbursement for changes to the specifications that were not formally approved by the Stolarskys, which is "a violation of the [C]ontract."

Jerry testified that he and his wife did not owe Dimension "a dime" for the upgrades. Jerry said they were never presented with any change orders along the way, but he understood that all upgrades or "extras" were being provided in exchange for bartered work. When asked whether they were given credit for all the bartered work he performed, Jerry said there "[m]ight be a couple jobs here and there" that went uncredited but did not provide any further details.

He also testified that there were numerous items on the punch list that Dimension never completed, including faulty caulking, a "windowsill not installed correctly," "[b]roken mortar in the stone," improperly installed air ducts in the attic, and an improperly installed water heater pan that caused water damage to the ceiling. For each allegedly incomplete or defective item in the home, the Stolarskys presented a supporting photograph. Jerry explained that they were seeking $8,000 in damages (the amount requested in their counter-petition) because a contractor had given them a bid in that amount to repair all the allegedly incomplete and defective work.

During cross examination, Jerry claimed they did not receive everything they bartered for because Dimension failed to complete "the outdoor kitchen." He did not offer any details on how the outdoor kitchen was allegedly incomplete, but earlier in his

6

testimony Jerry alleged that "the granite countertops kept falling back down and never got fixed." He admitted that they never sent a written demand to Dimension notifying them of any alleged defects, as required under the Contract. Instead, after the lawsuit was filed, the Stolarskys hired an inspector, who prepared a report that was tendered to Dimension during discovery.

Numerous pre-litigation emails between Leslie and Dziuk were admitted into evidence. In one email, dated September 11, 2020, Dziuk confirmed that he had updated the unsigned Change Order "with the two invoices for tractor work" in the amounts of $875 and $650. Leslie responded three days later with, "Are you okay with payments?" In a follow up email a week later, Leslie asked again, "Are you okay with payments?" Dziuk responded that Dimension needed to be "paid in full," and Leslie wrote back, "The main reason for the delay in the change order payment, was the house was not finished. There's [sic] also things that . . . have [not] been completed in the home." Finally, in another email on December 2, 2020, Leslie offered to pay Dziuk $2,000 a month.[2]

Leslie testified that she offered to pay Dziuk $2,000 a month because she felt "intimidated" by him. However, on cross examination, Leslie conceded that they offered to make monthly payments because they owed "at least $4,000" as of December 2, 2020. Dimension's counsel then asked, "So your testimony today is that Dimension Builders is owed $4,000? Is that your testimony today?" and Leslie responded, "Yes." She also

---

[2] Dimension's counsel refers to this email as plaintiff's "Exhibit 44" during trial. Although Volume 3 of the reporter's record lists exhibit "No. 44" in the index, there is no Exhibit 44 in the reporter's record; instead, it skips from "Exhibit 43" to "Exhibit 45." Nevertheless, Leslie acknowledged the content of the email during her testimony.

acknowledged that throughout the email exchanges in September and December 2020, she never disputed that they owed the $28,844.74 balance in the unsigned Change Order.

Leslie also testified that around the time Dimension demanded payment, her husband said to Dziuk, "Hey, don't forget, you know, if you got any houses coming up, we still need to trade out some work." It was at this time, according to Leslie, that Dziuk revealed that "he had lost his license to do any homebuilding." Asked to elaborate on what she meant by "there's still some work to be traded out," Leslie said, "Because bartering, that's the deal they had come up with for any change orders that would still be owed[,] but [Dziuk] had lost his license and couldn't afford the insurance because a gentleman got hurt on one of his jobs." She agreed that Jerry's offer to provide additional bartering work was consistent with her offer to pay $2,000 a month.

Finally, like Jerry, Leslie testified about problems they have experienced with the home, including flooding "because weep holes were not drilled correctly," "a roof leak that happened into [their] newborn daughter's room," and a shower that "still leaks water" even though Dziuk attempted to repair it multiple times. She also disputed one of the line items in the unsigned Change Order, saying they paid for the grass when they picked it up from Dziuk's grass farm and then installed it themselves. The charge for this item in the unsigned Change Order was $1,100.

After taking the matter under advisement, the trial court entered a take nothing judgment against both parties. At Dimension's request, the trial court made findings of fact and conclusions of law, including a finding that Dimension "was fully compensated

8

for all work performed beyond the scope of the CONTRACT Specifications." The trial court denied Dimension's request to make additional findings and conclusions on its quantum meruit claim. Dimension filed a notice of appeal, but the Stolarskys did not. The case before this Court is therefore confined to whether the take nothing judgment was proper on Dimension's breach of contract and quantum meruit claims.

## II. STANDARD OF REVIEW

"A trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict." *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). Thus, "[a] trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer." *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994) (citing *S. States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex. 1989)).

A party attacking the factual sufficiency of an adverse finding on an issue for which it carried the burden of proof must establish that the adverse finding was against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In making that determination, we consider and weigh all the evidence, not just the evidence that supports the verdict. *Id.* We can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

When reviewing a factual sufficiency challenge, we are mindful that it is the factfinder's province to determine "the credibility of witnesses and the weight to be given

9

to their testimony." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). In that regard, we may not substitute our judgment for that of the factfinder. *Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019).

### III.    ANALYSIS

Dimension challenges the take nothing judgment only as it relates to its breach of contract and quantum meruit claims. Dimension argues that these alternative theories of liability are both legally viable under the undisputed facts of the case, albeit for different reasons. Dimension also challenges the factual sufficiency of the trial court's finding that Dimension was fully compensated for the work it performed beyond the scope of the Contract.

### A.    Dimension was Entitled to Recover in Quantum Meruit

The Stolarskys maintain that, because the Contract requires a written Change Order signed by the parties to constitute an amendment to the Contract, the oral Change Orders were not "binding on the parties, and thus, [they] do not owe [Dimension] any amount over the contracted price." The Stolarskys note the "general rule that there can be no recovery where a contract stipulates that any alterations or deviations to the work contemplated therein must be ordered in writing" and the contractor performs work outside the scope of the contract without written consent. *See D. H. Overmyer Co. v. Harbison*, 453 S.W.2d 368, 370 (Tex. App.—El Paso 1970, no writ) ("It is the general rule that a stipulation, in a private building or construction contract, that changes, alterations or deviations must be ordered in writing, is valid and binding upon the parties and, therefore, so long as such a provision remains in effect, no recovery can be had for the

alterations done without a written order in compliance therewith."). As one court put it, "A man contracting for a modest cottage can[]not be made to pay for a mansion . . . because a judicial tribunal thinks it suitable for him, nor should a man be required to accept inferior and different materials and workmanship when he has contracted otherwise." *Magee v. I. & G. N. Wood & Coal Co.*, 269 S.W.2d 498, 505 (Tex. App.—San Antonio 1954, writ ref'd n.r.e.). Of course, a "general rule" is always subject to exceptions, and we conclude that one applies here.

Quantum meruit is an equitable remedy that "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (quoting *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988)). "The purpose of this common law doctrine is to prevent a party from being unjustly enriched by retaining the benefits of the performance without paying anything in return." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (cleaned up) (quoting *Truly*, 744 S.W.2d at 938). To recover under a quantum-meruit claim, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted and enjoyed by the person sought to be charged; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged. *Id.* at 732–33 (citing *Vortt*, 787 S.W.2d at 944).

"A party generally cannot recover under a quantum-meruit claim when there is a valid contract covering the services or materials furnished." *Id.* at 733 (citing *In re Kellogg*

11

*Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (orig. proceeding)). "Construction contracts are an exception to this rule." *Murray v. Crest Const., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995) (per curiam) (holding that a subcontractor could recover under quantum meruit even though there was an express contract between the parties covering the work to be performed). Regardless, "the existence of an express contract does not preclude recovery in quantum meruit for the reasonable value of work performed and accepted which is not covered by an express contract." *Hill*, 544 S.W.3d at 737 (citing *Black Lake Pipe Line Co. v. Union Const. Co.*, 538 S.W.2d 80, 86 (Tex. 1976), *overruled on other grounds by Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989)). Whether an express contract covers the services or materials at issue is a legal question we review de novo. *Id.* (citing *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 724 (Tex. App.—Houston [1st Dist.] 2011, no pet.)).

"The measure of damages for recovery under a quantum-meruit theory is the reasonable value of the work performed and the materials furnished." *Id.* at 733 (citation omitted). "A quantum-meruit claim does not proceed on a contract for a specified price, but proceeds independently of a contract to recover the value of the services rendered or materials furnished." *Id.* at 736 (citation omitted).

The Stolarskys argue that Dimension cannot recover on its claim for breach of contract because the upgrades provided by Dimension were beyond the scope of the written Contract. We agree. But that also means that Dimension may recover under its quantum-meruit claim for the reasonable value of the work performed and the materials furnished beyond the scope of the contract. *See Hill*, 544 S.W.3d at 737; *Gentry v. Squires*

12

*Const., Inc.*, 188 S.W.3d 396, 403 (Tex. App.—Dallas 2006, no pet.) (explaining that, among other circumstances, "[a] contractor may recover the reasonable value of the services rendered and accepted or the materials supplied under the theory of quantum meruit if . . . the services rendered and accepted are not covered by the contract" (citations omitted)). The following facts are undisputed: the Stolarskys orally requested numerous upgrades beyond the Contract specifications; Dimension provided those upgrades with an understanding between the parties that Dimension expected to be compensated for those upgrades; and the Stolarskys have lived in the home, enjoying the upgrades, since 2018. Under these facts, Dimension was entitled to recover on its quantum-meruit claim to the extent it proved the reasonable value of the upgrades, which we turn to in the next section. *See Gentry*, 188 S.W.3d at 403; *Tex. Constr. Assocs. v. Balli*, 558 S.W.2d 513, 521–22 (Tex. App.—Corpus Christi–Edinburg 1977, no writ) (holding that subcontractor could recover in quantum meruit under similar circumstances because the property owner and contractor "specifically requested" the work and promised to pay for it).

We conclude that, although Dimension could not prevail on its breach of contract claim, its quantum-meruit claim was legally viable. Consequently, Dimension's first issue is overruled, but its second issue is sustained.

## B.      No-Damages Finding not Supported by Factually Sufficient Evidence

It was undisputed at trial that the parties entered into a bartering agreement whereby Dimension provided the Stolarskys with upgrades beyond the Contract specifications paid for by the Stolarskys at closing, and in exchange, Jerry performed dirt

work for Dimension on other job sites. This undisputed fact is embedded in the trial court's finding that Dimension "was fully compensated for all work performed beyond the scope of the CONTRACT Specifications." By its third issue, Dimension contends that the trial court's finding that Dimension was fully compensated for the upgrades is so against the great weight and preponderance of the contrary evidence as to be manifestly wrong. We agree.

Because it was Dimension's burden to prove the reasonable value of the upgrades, we begin with the evidence that was contrary to the trial court's no-damages finding. Dziuk provided detailed testimony about why the Stolarskys owed Dimension a total of $28,844.74 for the upgrades, and his testimony was corroborated by extensive back-up documentation. He further testified that this figure represented Dimension's total out-of-pocket expenses for the materials and labor necessary to complete the upgrades. Stated differently, Dimension was not seeking any profit or markup for the upgrades. This evidence of Dimension's out-of-pocket expenses constituted legally sufficient evidence of the reasonable value of the services provided and materials furnished. *See PIC Realty Corp. v. Southfield Farms, Inc.*, 832 S.W.2d 610, 616 (Tex. App.—Corpus Christi–Edinburg 1992, no writ) (explaining that "reasonable value" has long been understood in Texas law to mean "the expenses incurred while providing those services and materials"). Therefore, contrary to the Stolarskys' argument, there is not "a lack of evidence of the value of the services [Dimension] claims to have provided."

There was also significant evidence presented that the Stolarskys were withholding payment not because they disputed the amount owed, but because they were

14

using it as leverage to ensure that Dimension completed their punch list and warranty claims. Indeed, as Leslie stated in her September 23, 2020 email to Dziuk, "The main reason for the delay in the change order payment, was the house was not finished." Also, rather than dispute the final tally in the unsigned Change Order, Leslie asked in other emails if they could enter a repayment plan and even offered to pay Dimension $2,000 a month. Leslie further testified that, during this same period, her husband offered to perform additional bartered work for Dimension because they "still need[ed] to trade out some work." These repeated offers to further compensate Dimension for the upgrades are directly contrary to the trial court's no-damages finding.

Most importantly, when confronted with her prior offer to make $2,000 payments, Leslie clearly and unequivocally admitted at trial that she and her husband still owed Dimension $4,000 for the upgrades. Leslie offered no explanation to support her bare conclusion that the amount owed was only $4,000. Nevertheless, her trial admission that they owed *some* amount was weighty. If she was the only defendant in this case, we would conclude that Leslie made a binding judicial admission that the factfinder could not disregard. *See Scharer v. John's Cars, Inc.*, 776 S.W.2d 228, 232 (Tex. App.—El Paso 1989, writ denied) (op. on reh'g) (finding judgment notwithstanding the verdict on jury's no-damages finding was proper because, although defendant disputed the amount claimed by plaintiff, defendant admitted at trial that he owed $5,434 for the services rendered, thus constituting a binding judicial admission). But even if her admission was not binding on Jerry or only amounted to a collective quasi-admission[3] under the

___

[3] Unlike a binding judicial admission, a quasi-admission "provides some evidence to support the fact associated with the admission, the credibility and weight of which is for the jury to resolve." *Cruz v.*

15

circumstances, her in-trial admission was bolstered by her pre-litigation emails to Dziuk implicitly admitting she and her husband owed a balance for the upgrades.

In considering the evidence that potentially supports the no-damages finding, Jerry testified that they did not owe Dimension "a dime" for the upgrades. "Bare, baseless opinions will not support a judgment." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). To constitute some evidence, the witness must "explain the factual basis" for their conclusion. *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 161 (Tex. 2012) ("In both cases, the owners stated a conclusion without explanation; the testimony is conclusory and no evidence."). To support his assertion, Jerry testified that there "[m]ight be a couple jobs here and there" that went uncredited. Yet, the Stolarskys never identified any specific job Jerry "might" have performed that was not credited in Dimension's calculations. To the contrary, the unsigned Change Order includes credits for two jobs Leslie requested in her back-and-forth emails with Dziuk. In other words, there is no evidence in the record that would support an implied finding that the Stolarskys did not receive full credit for the work Jerry performed. *See Justiss*, 397 S.W.3d at 161; *Pollock*, 284 S.W.3d at 816.

Jerry also testified that Dimension never completed "the outdoor kitchen" the couple bartered for as an upgrade because "the granite countertops kept falling back down and never got fixed." But neither he nor his wife explained what it would cost to repair or replace the granite or how that cost for a single upgrade would completely offset Dimension's $28,844.74 damage claim for all the upgrades. The only evidence about the

---

*Mor-Con, Inc.*, 672 S.W.3d 175, 184 (Tex. App.—Tyler 2023, no pet.) (collecting cases).

16

cost of the granite was provided by Dziuk, who testified that Dimension paid $3,370 for the material. Along similar lines, Leslie testified that they had already paid for the grass upgrade, which was listed in the unsigned Change Order at a cost of $1,100. Significantly, Jerry and Leslie did not dispute that they received any of the other upgrades listed in the unsigned Change Order, nor did they challenge the cost Dimension assigned to each upgrade.

Finally, although Jerry testified that they received an $8,000 bid to repair the allegedly incomplete and defective work performed by Dimension, those repairs were irrelevant to the reasonable value of the upgrades. The Stolarskys have consistently maintained throughout this case that the upgrades were not part of the Contract because they never signed a Change Order. So, when Jerry explained that the bid represented the damages the Stolarskys were seeking on their counterclaims for breach of contract, he was necessarily referring to work Dimension performed pursuant to the Contract specifications, not the bartered upgrades. To be sure, the Stolarskys' testimony about an improperly installed air duct, windowsill, and water heater, to name a few, represented work that Dimension performed under the Contract specifications. Of course, the trial court found that Dimension did not breach the contract—a finding the Stolarskys have not challenged on appeal. In any event, the repair bid constituted no evidence of the "reasonable value of the work performed and the materials furnished" for the upgrades. *See Hill*, 544 S.W.3d at 733. Even if we assume that the trial court could have properly considered the entire $8,000 bid, the sum of the three figures above ($8,000 + $3,370 + $1,100) does not add up to $28,844.74. Thus, Jerry's conclusion that they did not owe

17

Dimension "a dime" for the upgrades was not supported by his or his wife's explanation and was inconsistent with other undisputed facts.

Although we are mindful of the deference we must give the factfinder to resolve conflicts in the evidence, we cannot ignore a finding that has no reasonable evidentiary basis. *See City of Keller v. Wilson*, 168 S.W.3d 802, 828 (Tex. 2005) ("It is not hubris that occasionally requires an appellate court to find a jury verdict has no reasonable evidentiary basis."). The overwhelming weight of the evidence establishes that the Stolarskys owe Dimension some amount of money for the reasonable value of the upgrades. *See Cain*, 709 S.W.2d at 176. Accordingly, we sustain Dimension's third issue by holding that the evidence was factually insufficient to support the trial court's finding that Dimension was fully compensated for the extra-contractual upgrades the company provided the Stolarskys.[4]

## C.    Disposition

Should we reverse on one of its claims, Dimension asks that we "remand the case for calculation of damages, attorney's fees, and interest." However, an appellate court may not reverse and remand for a new trial on unliquidated damages alone when, as here, liability was contested in the trial court. *See* TEX. R. APP. P. 44.1(b) (prohibiting appellate court from ordering separate trial solely on unliquidated damages if liability is contested). We are therefore required to remand the entire quantum meruit claim for a new trial. *See Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (per curiam).

---

[4] Given our disposition, we do not reach Dimension's fourth issue. *See* TEX. R. APP. P. 47.1.

## IV. Conclusion

We affirm the trial court's judgment in part, and reverse and remand in part.[5]

JENNY CRON
Justice

Delivered and filed on the
20th day of March, 2025.

---

[5] Dimension's pending motion requesting that we submit the case is dismissed as moot.